**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

UNITED STATES of AMERICA,

      Plaintiff-Appellee,

v.

MARK EDWIN SELLS,

      Defendant-Appellant.

No. 04-5167

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 04-CR-57-K)**

---

Barry L. Derryberry, Research and Writing Specialist (Paul D. Brunton, Federal Public Defender, with him on the brief), Tulsa, Oklahoma, for Defendant-Appellant.

Timothy L. Faerber, Assistant United States Attorney (David E. O'Meilia, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **KELLY**, **EBEL**, and **McWILLIAMS**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Under the severability doctrine, "[t]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant,

but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized—on plain view grounds, for example—during . . . execution [of the valid portions])." United States v. Brown, 984 F.2d 1074, 1077 (10th Cir. 1993) (quotations, alteration omitted). We adopted the doctrine in Brown, and more fully addressed it in United States v. Naugle, 997 F.2d 819, 822-23 (10th Cir. 1993); see also United States v. Soussi, 29 F.3d 565, 568 n.3 (10th Cir. 1994).[1] In Naugle, we limited the applicability of the doctrine by holding that it applies only if "the valid portions of the warrant [are] sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." 997 F.2d at 822.

---

[1] The Supreme Court has not expressly addressed or adopted the doctrine of severability. But see Andresen v. Maryland, 427 U.S. 463, 480-82 & 482 n.11 (1976) (holding that an entire search warrant was not general and that materials related to the specific crime of false pretense could be seized, despite evidence in the record that other papers not within the scope of the warrant or otherwise improperly seized had been voluntarily returned by the state or suppressed by the district court). However, all federal circuits have followed the doctrine, synonymously referring to it as "severability," "severance," "redaction," or "partial suppression." See In re Search Warrant Dated July 4, 1977, 667 F.2d 117, 133 (D.C. Cir. 1981), abrogated on other grounds by Horton v. California, 496 U.S. 128 (1990); United States v. Riggs, 690 F.2d 298, 300-01 (1st Cir. 1982); United States v. George, 975 F.2d 72, 79 (2d Cir. 1992); United States v. Christine, 687 F.2d 749, 759 (3d Cir. 1982); United States v. Jacob, 657 F.2d 49, 52 (4th Cir. 1981); United States v. Cook, 657 F.2d 730, 735 (5th Cir. 1981); United States v. Blakeney, 942 F.2d 1001, 1027 (6th Cir. 1991); United States v. Holmes, 452 F.2d 249, 259-60 (7th Cir. 1971); United States v. Fitzgerald, 724 F.2d 633, 636 (8th Cir. 1983)); United States v. Cardwell, 680 F.2d 75, 78 (9th Cir. 1982); United States v. Wuagneux, 683 F.2d 1343, 1354 (11th Cir. 1982); see also United States v. Giresi, 488 F. Supp. 445, 459 n. 17 (D.N.J. 1980) (listing numerous state cases that support the doctrine).

We apply a multiple-step analysis to determine whether severability is applicable: First, we divide the warrant in a commonsense, practical manner into individual clauses, portions, paragraphs, or categories. We then evaluate the constitutionality of each individual part to determine whether some portion of the warrant satisfies the probable cause and particularity requirements of the Fourth Amendment. If no part of the warrant particularly describes items to be seized for which there is probable cause, then severance does not apply, and all items seized by such a warrant should be suppressed. If, however, at least a part of the warrant is sufficiently particularized and supported by probable cause, then we proceed to determine whether the requirements set out in Naugle have been satisfied. In doing so, we first determine whether the valid portions are distinguishable from the invalid portions. If the parts may be meaningfully severed, then we next look to the warrant on its face to determine whether the valid portions make up "the greater part of the warrant," by examining both the quantitative and qualitative aspects of the valid portions relative to the invalid portion. This analysis ensures that severance does not render the Fourth Amendment's warrant requirement meaningless. If the valid portions make up "the greater part of the warrant," then we sever those portions, suppress the evidence seized pursuant to the portions that fail to meet the Fourth Amendment's warrant requirement, and admit all evidence seized pursuant to the valid portions or lawfully seized during execution of the valid portions.

Here, Defendant-Appellant Mark Sells was charged with possession of an unregistered destructive device after execution of a search warrant at his residence. He filed a motion to suppress all of the evidence seized from his residence, which the court orally denied in part. Sells then conditionally pleaded guilty, expressly reserving his right to appeal the district court's ruling on the suppression motion. Applying the analysis summarized above and described more fully below, we conclude that the district court correctly severed the valid portions of the warrant at issue in this case and ordered partial suppression, and we AFFIRM.

## BACKGROUND

On March 11, 2004, officers responded to a call that shots were fired into the home of Orville and Nellie Sells. Upon arrival, deputies found two spent .223-caliber shell casings lying on top of the grass near the master bedroom window, observed two bullet holes in the master bedroom window, and discovered two bullet holes in the headboard of the bed in which Orville and Nellie Sells had been sleeping. Orville Sells reported that his son, Mark Sells, had threatened his life the previous day, and he warned officers that his son had numerous firearms at his, Mark Sells's, residence.

Officers established surveillance at Mark Sells's residence that night. They saw Sells arrive, back his car to the garage door, open the garage, carry a sleeping child inside, return to the car, and remove a dark jacket and put it on. The

- 4 -

officers continued to watch as Sells removed: two shovels, which he placed along the wall of the garage; a large bag, which he placed on the floor of the garage; and what appeared to be a deer rifle, which he carried into the house. The officers then saw Sells return to the vehicle and remove the following additional items from the trunk and bring them into the house: a large tactical-type bag, a flak jacket, and an AR-15 assault rifle with a scope.

Supported by an affidavit indicating the above facts, a search warrant for Sells's home was issued on March 12, 2004. The warrant described the items to be searched for and seized as follows:

> [a]ny .223 caliber Firearm or rifle, .223 caliber ammunition, footwear, clothing, any other related fruits, instrumentalities and evidence of the crime.

The affidavit was neither incorporated into the warrant nor attached to it.

Five officers executed the search warrant at Sells's home, during which the officers found a loaded .223-caliber AR-15 rifle in the living room "right off the bat." As officers continued the search in the master bedroom, Sells arrived, and the search was temporarily stopped while Detective Rhymes served Sells with a protective order that had been issued on behalf of Orville and Nellie Sells in Washington County.

The inventory of the seized items reflects that the officers also seized a 9 mm machine pistol, a 410 shotgun, and three .22-caliber rifles; Detective Rhymes testified that these additional firearms were seized based on the illegality of

possessing a firearm while being subject to a protective order.  The officers also seized load-bearing suspenders, a pistol belt, a bayonet, a tactical bag, boots, three gun cases, a rucksack, a ballistic vest, and a knife.

During the search of the master bedroom, deputies discovered a hidden compartment within the closet.  Within the hidden compartment, they found thousands of rounds of ammunition.  Approximately seventy percent of the .223-caliber ammunition seized was from the hidden compartment.  While searching in the hidden compartment, officers also spotted a pipe bomb.  At that point, Detective Rhymes instructed the other officers to evacuate the residence and called the Tulsa Police Department Bomb Squad and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to neutralize the bomb.  Special Agent Josh Petree of ATF determined that the device found in the hidden compartment was in fact a pipe bomb and disarmed it.

On a nearby shelf, Agent Petree saw two-sided Velcro tape, which appeared identical to the strip of tape attached to the pipe bomb, and numerous 12-gauge shotgun rounds with the ends clipped off and the powder removed, which Agent Petree believed could have been used inside the pipe bomb as an ignition source. The officers found a bag a few feet from the pipe bomb that contained a package labeled "Ten Pack of Squibs," which were identical in appearance to the squibs attached to the pipe bomb found in the hidden compartment.  In the garage,

Special Agent Petree saw a welding apparatus and a drill press, which he testified could have been used to make the pipe bomb. All of these items were seized.

On April 13, 2004, Sells was charged with possession of an unregistered destructive device (a pipe bomb) in violation of 26 U.S.C. §§ 5861(d) and 5871. Sells filed a motion to suppress all evidence seized during the execution of the search warrant at his residence on the grounds that the warrant failed particularly to describe the evidence to be seized, that probable cause was lacking to support seizure of the broad items listed in the warrant, and that the officers conducted a general search. The district court ruled that "[t]he warrant describe[d] certain items in broad or generic terms, which is not adequate under the circumstances and nature of the investigation here." The court ruled that severance was applicable in this case and ordered partial suppression, upholding the seizure of 1) the .223 rifle and .223 ammunition pursuant to the redacted warrant and 2) the shotgun shells, pipe bomb, Velcro, squibs, drill press, welding equipment, and flux pursuant to the plain view doctrine.

Sells conditionally pleaded guilty, waiving his right to trial but expressly reserving his right to appeal the district court's denial of his motion to suppress. The district court then sentenced Sells to thirty months' imprisonment, a $2,500 fine, three years' supervised release, and a special monetary assessment of $100. Sells now appeals the district court's suppression order.

## DISCUSSION

As he did before the district court, Sells contends that several deficiencies in the warrant in this case rendered the search of his residence unconstitutional. Specifically, he contends that the information included in the affidavit in support of the search warrant failed to establish probable cause to support a search for footwear or clothing and that the overbreath of the search warrant rendered it a constitutionally impermissible general warrant. The United States argues that, despite any constitutional infirmities, the valid portions of the search warrant are severable from the invalid portions and that the warrantless items seized from Sells's residence are admissible under the plain view doctrine. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude, in accordance with the district court's order, that severance of the warrant and partial suppression was appropriate.

## I.      Standard of Review

When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in the light most favorable to the government. United States v. Gay, 240 F.3d 1222, 1225 (10th Cir. 2001). Although we accept the district court's factual findings unless they are clearly erroneous, id., we review de novo whether the good faith exception set forth in United States v. Leon, 468 U.S. 897 (1984), applies, United States v. Riccardi, 405 F.3d 852, 860 (10th Cir. 2005); whether a search warrant may be

- 8 -

severed, Soussi, 29 F.3d at 568; the validity of an evidentiary seizure under the plain view doctrine, United States v. Thomas, 372 F.3d 1173, 1178 (10th Cir. 2004); and the permissible scope of the search, see Naugle, 997 F.2d at 822.

**II.       The Fourth Amendment and the Severance Doctrine**

The Fourth Amendment commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The search warrant probable cause and particularity requirements serve two constitutional protections:

> First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the "general warrant" abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. The warrant accomplishes this second objective by requiring a "particular description" of the things to be seized.

Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971) (citations omitted); see also 2 W. La Fave, Search and Seizure, § 4.6(a) (4th ed. 2004).

Probable cause requires a magistrate judge to find that, "given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular

place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for concluding' that probable cause existed." Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (citation, alterations omitted). The particularity requirement is satisfied when the description of an item to be searched for and seized pursuant to the warrant

> enables the searcher to reasonably ascertain and identify the things authorized to be seized. Even a warrant that describes the items to be seized in broad or generic terms may be valid when the description is as specific as the circumstances and the nature of the activity under investigation permit. However, the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized.

United States v. Leary, 846 F.2d 592, 600 (10th Cir. 1988) (quotations, citations, footnote omitted).

The ordinary remedy for a search conducted or items seized in violation of the Fourth Amendment's warrant requirements is suppression. See United States v. Olivares-Rangel, 458 F.3d 1104, 1108 (10th Cir. 2006) ("The ordinary remedy in a criminal case for violation of the Fourth Amendment is suppression of any evidence obtained during the illegal police conduct."). The Supreme Court has recently reiterated, however, that "[s]uppression of evidence" should be a "last resort, not [a] first impulse." Hudson v. Michigan, 126 S. Ct. 2159, 2163 (2006). This is because

> [t]he exclusionary rule generates substantial social costs, which sometimes include setting the guilty free and the dangerous at large. We have therefore been cautious against expanding it and have repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application. We have rejected indiscriminate application of the rule and have held it to be applicable only where its remedial objectives are thought most efficaciously served—that is, where its deterrence benefits outweigh its substantial social costs.

Id. (quotations, citations, alterations omitted).

In accordance with the purposes underlying the warrant requirement[2] and the exclusionary rule,[3] every federal court to consider the issue has adopted the

---

[2] As the Third Circuit has explained, severance complies with the five purposes of the warrant requirement because (1) with respect to the search and seizure conducted pursuant to the valid portion of the warrant, the intrusion into personal privacy has been justified by probable cause to believe that the search and seizure will serve society's need for law enforcement; (2) because the warrant is a duly issued one, the objective of interposing a magistrate between law enforcement officials and the citizen has been attained; (3) even though it may not be conterminous with the underlying probable cause showing, the scope of a search pursuant to a particularized, overbroad warrant is nevertheless limited by the terms of its authorization, and redaction neither exacerbates nor ratifies the unwarranted intrusions conducted pursuant to any general clauses, but merely preserves the evidence seized pursuant to those clauses particularly describing items to be seized; (4) as to the valid portions of the warrants salvaged by redaction, the individual whose property is to be searched has received notification of the lawful authority of the executing officer, the need to search, and the limits of the power to search; and (5) redaction does not affect the generation of a record susceptible to subsequent judicial review. See Christine, 687 F.2d at 758.

[3] Partial suppression pursuant to the severance doctrine is more consistent with the purposes of the exclusionary rule than total suppression because "[t]he cost of suppressing all the evidence seized, including that seized pursuant to the valid portions of the warrant, is so great that the lesser benefits accruing to the interests served by the Fourth Amendment cannot justify complete suppression."

(continued...)

- 11 -

doctrine of severance, whereby valid portions of a warrant are severed from the invalid portions and only materials seized under the authority of the valid portions, or lawfully seized while executing the valid portions, are admissible. The fact that severance may be appropriate in some cases, however, does not mean it is appropriate in every case. See George, 975 F.2d at 79. Under Naugle, we stated that the doctrine is only applicable if "the valid portions of the warrant [are] sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." 997 F.2d at 822. Although we concluded in Naugle that the facts of that case satisfied these requirements, we did so without providing any analysis for that conclusion. We therefore use this appeal to provide the district courts with some guidance in determining whether and how the severance doctrine applies.

## III. Application of the Severance Doctrine

### A. Divide warrant

Because Naugle requires us to evaluate the "valid portions of the warrant," id. (emphasis added), our first step in determining whether the severability doctrine is applicable is to divide the warrant into individual phrases, clauses,

---

[3](...continued)
Christine, 687 F.2d at 758; see also 2 LaFave, supra, § 4.6(f) ("[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well.").

paragraphs, or categories of items.  See id. at 820-21 & 821 n.1 (separating the warrant at issue into "categories of items");[4] see also Christine, 687 F.2d at 758 (referring to "valid severable phrases or clauses") (emphases added); Rosemarie A. Lynskey, Note, A Middle Ground Approach to the Exclusionary Remedy: Reconciling the Redaction Doctrine with United States v. Leon, 41 VAND. L. REV. 811, 812 n.5 (1988) (stating that, in redacting a warrant, the court should first

---

[4]  Specifically, the warrant in Naugle stated:

Letters, papers, documents, checks or envelopes inscribed or printed upon with the Utah County Constable, the Utah County Constable Star, or any such insignia which gives the appearance or represents a government agency, or anything else that in its nature could be used to imply an affiliation with such an agency, any surveillance equipment including electronic listening and recording devices, cameras, binoculars, radios, telephone hardware and records, business records, personnel files, payroll records, computer, both hard and software, contracts, tapes or video equipment, and any other articles used in the support or furtherance of.

997 F.2d at 821 n.1 (quotation omitted).  However, we concluded that the warrant authorized officers to search for the following four categories of items:

(1) letters, papers, documents, checks or envelopes inscribed or printed upon with the Utah County Constable or Utah County Constable Star; (2) letters, papers, documents, checks or envelopes inscribed or printed upon any such insignia which gives the appearance or represents a government agency, or anything else that in its nature could be used to imply an affiliation with such an agency; (3) any surveillance equipment including electronic listening and recording devices, cameras, binoculars, radios, telephone hardware and records; (4) business records, personnel files, payroll records, computer, both hard and software, contracts, tapes or video equipment.

Id. at 820-21 (quotation omitted).

- 13 -

"divide the warrant into separate clauses"); Mark S. Halpern, Comment,

Redaction—The Alternative to the Total Suppression of Evidence Seized Pursuant

to a Partially Invalid Search Warrant, 57 TEMP. L.Q. 77, 93 (1984) (same).  In

doing so, we apply the general rule that courts should interpret warrants in a

"commonsense and realistic fashion," rather than a "hypertechnical" manner.

United States v. Ventresca, 380 U.S. 102, 108-09 (1965); see also Gates, 462 U.S.

at 236.  Although the proper division of any particular warrant must be

determined on a case-by-case basis, we agree that "[c]ommon sense suggests that

a particular division is appropriate so long as it does not distort the meaning of

the severed clause" or the warrant.  Halpern, supra, at 93; see also State v.

Perrone, 834 P.2d 611, 622 (Wash. 1992) ("[T]here must be some logical and

reasonable basis for the division of the warrant into parts which may be examined

for severability.").

Here, Sells argues that the commas used in the warrant provide a dividing

point each time one is used and thus provide a commonsense means of severing

the parts of the warrant.  We reject that approach in this case as "hypertechnical."

We believe the most logical interpretation of the warrant indicates that it

authorized officers to search for the following five categories of evidence: (1) any

.223 caliber Firearm or rifle, (2) .223 caliber ammunition, (3) footwear,

(4) clothing, and (5) any other related fruits, instrumentalities and evidence of the crime.[5]

**B.    Examine each part to determine whether it complies with the Fourth Amendment and whether any valid portion is sufficiently particularized**

After dividing the warrant into commonsense parts, we may then determine whether the requirements for severability set out in Naugle are met. Under Naugle, the doctrine applies only if, first, a part of the warrant describes with sufficient particularity items to be seized for which there is probable cause. See 997 F.2d at 822 ("[T]he valid portions of the warrant must be sufficiently particularized . . . ."). "Otherwise, there is nothing for the severability doctrine to save." State v. Maddox, 67 P.3d 1135, 1141 (Wash. Ct. App. 2003), aff'd 98 P.3d 1199 (Wash. 2004); see also United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57), 307 F.3d 137, 159 (3d Cir. 2002); George, 975 F.2d at 79-80; Cardwell, 680 F.2d at 78; Christine, 687 F.2d at 758; Leary, 846 F.2d at 606 n.25 (declining to employ the severance doctrine, recognized in dicta, where "no portion of the . . . warrant . . . adequately define[d] the items to be seized").

---

[5] Arguably footwear and clothing could be included into a single category. If we did so, it would only strengthen our conclusion to apply the severability analysis to this warrant.

- 15 -

We examine each part separately in a non-hypertechnical, commonsense fashion, Ventresca, 380 U.S. at 108, to determine whether it complies with the Fourth Amendment. See Christine, 687 F.2d at 754 ("Each part of the search authorized by the warrant is examined separately to determine whether it is impermissibly general or unsupported by probable cause.").

Here, Sells does not challenge the first or second categories—that is, the categories authorizing officers to search for (1) any .223-caliber Firearm or rifle or (2) .223-caliber ammunition. We agree that the affidavit in this case provides a "substantial basis for concluding that probable cause existed," Gates, 462 U.S. at 238-39 (quotation, alteration omitted), to search for these categories of items. Furthermore, we agree that these two categories meet the Fourth Amendment's particularity requirement. We therefore turn our focus to the other three categories of items.

As the Government concedes, the affidavit does not provide any reason to authorize a search for and seizure of footwear or clothing—the third and fourth categories of items. Additionally, the warrant provides no description of or limitation on the footwear or clothing to be seized, and thus allows officers to search for and seize any sort of footwear and clothing. Although footwear is a somewhat narrowing term, we accept for the purpose of this case the government's concession that that term, by itself, is too broad. Accordingly, we conclude that these categories do not satisfy the Fourth Amendment's warrant

requirements because they fail to "ensure that [the] search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." Leary, 846 F.2d at 600 (quotation omitted).

The final category of items under the warrant—"any other related fruits, instrumentalities and evidence of the crime"—has some characteristics of both a valid warrant provision and one that is too broad. Compare George, 975 F.2d at 74, 76 (concluding that a warrant authorizing officers to search for and seize "any other evidence relating to the commission of a crime" was overbroad) with Andresen, 427 U.S. at 479, 480-82 (holding that the phrase "together with other fruits, instrumentalities and evidence of crime at this (time) unknown" appended "at the end of a sentence containing a lengthy list of specified and particular items to be seized, all pertaining to Lot 13T . . . , did not authorize the executing officers to conduct a search for evidence of other crimes but only to search for and seize evidence relevant to the crime of false pretenses and Lot 13T") (quotations omitted); United States v. Robertson, 21 F.3d 1030, 1032, 1033 (10th Cir. 1994) (concluding that a warrant "authorizing the agents to search for and seize the four items that the agent specifically mentioned 'and other instrumentalities and fruits of the crime of armed carjacking'" was sufficiently particular). This catch-all warrant provision refers only to "the crime," without

identifying the crime in any manner in the warrant itself.[6]  On the other hand, the

entire clause is limited by the word "related," which refers back to the previously

enumerated provisions of the warrant.  Thus, the provision takes on the

characteristics of the preceding provisions of the warrant.

Thus, applying only a simple numerosity evaluation, the warrant is

approximately equally divided between valid and invalid provisions.  However, as

we explain later, the Naugle test is not a mere counting of provisions.  It requires

a qualitative analysis of whether the valid provisions or the invalid ones

constitute the greater weight of the warrant.

### C.    Determine whether valid parts are distinguishable from invalid parts

The mere fact that one or more parts of a search warrant are valid, however,

does not mean that the severance doctrine is automatically applicable.  Instead,

under Naugle's second requirement, some part of the warrant must be both

constitutionally valid and "distinguishable from the invalid portions" in order for

severability to apply.  997 F.2d at 822; see also Christine, 687 F.2d at 754

("Redaction is inappropriate when the valid portions of the warrant may not be

meaningfully severable from the warrant as a whole.").  Where, as here, each of

the categories of items to be seized describes distinct subject matter in language

---

[6]  The affidavit in this case cannot remedy the warrant's lack of
particularity because it was neither incorporated by express reference in the
warrant nor attached to the warrant.  See Leary, 846 F.2d at 603.

not linked to language of other categories, and each valid category retains its significance when isolated from rest of the warrant, then the valid portions may be severed from the warrant. Naugle, 997 F.2d at 821-22 (concluding that the requirements for severability were met in a case where "three categories in the search warrant were specific and supported by probable cause"); Brown, 984 F.2d at 1078 ("[A]lthough one sentence in the warrant may have been overbroad, the infirm portion may be isolated and severed from the constitutionally adequate part."); see also United States v. Ford, 184 F.3d 566, 574, 578 (6th Cir. 1999) (concluding that "[t]he portions of the warrant limited to fruits and evidence of bingo can be severed from the part of the warrant which is not so limited" where the warrant "contained ten clauses listing items to be seized"). The first and second categories of items (guns and ammunition) to be searched for and seized under the warrant are valid and distinguishable from the third and fourth categories of the warrant (clothing and footwear) that are invalid.

D. **Determine whether valid portions make up "the greater part of the warrant"**

Total suppression may still be required even where a part of the warrant is valid (and distinguishable) if the invalid portions so predominate the warrant that the warrant in essence authorizes "a general, exploratory rummaging in a person's belongings." Coolidge , 403 U.S. at 467. Under such circumstances, application of the severance doctrine would defeat rather than effectuate the protections of

the Fourth Amendment and the purpose of the exclusionary rule. See United States v. Freeman, 685 F.2d 942, 952 (5th Cir. 1982) ("[S]everability is not always possible, and should be granted only where the circumstances of the case reveal that legitimate fourth amendment interests will not be jeopardized.").

As a result, although articulated in varying forms, every court to adopt the severance doctrine has further limited its application to prohibit severance from saving a warrant that has been rendered a general warrant by nature of its invalid portions despite containing some valid portion. We have specifically held that severance is only applicable where the "valid portions . . . make up the greater part of the warrant," Naugle, 997 F.2d at 822. In a later case, we characterized Naugle's holding more generously to prohibit severability only when the valid portion of the warrant is not substantial. Soussi, 29 F.3d at 568 n.3 ("[I]n . . . Naugle, we limited somewhat the severability concept to allow it only when at least a substantial part of the warrant is valid.") (citation omitted). Other circuits seem, for the most part, to follow the Soussi articulation of the severability test. United States v. Kow, 58 F.3d 423, 428 (9th Cir. 1995) (severance inapplicable where the valid part is a "relatively insignificant part of an otherwise valid search"); United States v. Diaz, 841 F.2d 1, 4 (1st Cir. 1988) ("[Severance] is an especially appropriate measure . . . where the bulk of the warrant and records seized are fully supported by probable cause."); Spilotro, 800 F.2d at 967 (severance inapplicable where the valid part is a "relatively insignificant part of

the sweeping search"); In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926

F.2d 847, 858 (9th Cir. 1991) (same); Freeman, 685 F.2d at 952 (severance

inapplicable where "the warrant is generally invalid but as to some tangential

item meets the requirements of probable cause"); Cook, 657 F.2d at 735 n.6

(applying severance where "th[e] appeal [did] not disclose a situation in which

the warrant, when read with the affidavit, [was] essentially general in character

but as to some tangential items [met] the requirement of particularity.");

Maddox, 67 P.3d at 1141 ("[T]he severability doctrine applies only when . . . the

part of the warrant that includes particularly described items supported by

probable cause [is] significant when compared to the warrant as a whole."); Aday

v. Superior Court, 362 P.2d 47, 52 (Cal. 1961) ("We recognize the danger that

warrants might be obtained which are essentially general in character but as to

minor items meet the requirements of particularity . . . .  Such an abuse of the

warrant procedure, of course, could not be tolerated.").  Although there may be

some nuanced differences among these various articulations, we will use the

Naugle articulation as it was the first case to define this element of the

severability test.

The "greater part of the warrant" analysis focuses on the warrant itself

rather than upon an analysis of the items actually seized during the search.  See

Brown, 984 F.2d at 1078 (basing its severability holding purely on the language

of the warrants at issue); see also 2 LaFave, supra, § 3.7(d) ("If severability is

proper (there may be instances in which it is not), it would seem the rule would be more sensible if expressed not in terms of what was seized, but rather in terms of what search and seizure would have been permissible if the warrant had only named those items as to which probable cause was established.") (footnotes omitted). Accordingly, we reject the proposition that the extent of the actual search or the number of items seized is the relevant criteria to determine whether the valid portions of the warrant make up "the greater part of the warrant." This is not to say that a search that grossly exceeds the scope of the warrant may not be suppressed in its entirety, but that is a separate inquiry that we address later in this opinion. See United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir. 1988).

Certainly, the number of valid versus invalid provisions is one element in the analysis of which portion makes up the "greater part of the warrant." Naugle 997 F.2d at 822; see also Kow, 58 F.3d at 428 (concluding that severance was not available because only two of fourteen categories of seizable documents were even arguably not overbroad and thus "the valid portion of the warrant [was] a relatively insignificant part of an otherwise invalid search") (quotation omitted); United States v. Gomez-Soto, 723 F.2d 649, 654 (9th Cir. 1984) (holding that severance was "practicable" when "only one of thirteen descriptions" was insufficiently particularized).

However, merely counting parts, without any evaluation of the practical effect of those parts, is an improperly "hypertechnical" interpretation of the

search authorized by the warrant. See Gates, 462 U.S. at 236. We conclude that it is not an adequate basis by itself for determining whether a warrant's invalid parts render a warrant, as a whole, general, which is the underlying consideration in our "greater part of the warrant" analysis. A warrant's invalid portions, though numerically fewer than the valid portions, may be so broad and invasive that they contaminate the whole warrant. Conversely, the invalid portions, though numerically greater than the valid portions, may qualitatively contribute less than the valid portions to the overall scope of the authorized search. Common sense indicates that we must also evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant. See Voss v. Bergsgaard, 774 F.2d 402, 406 (10th Cir. 1985) (declining to employ the severance doctrine where "[t]he bulk of the warrant's provisions . . . simply allow[ed] for the seizure of evidence, whether or not related to tax fraud, and largely subsume[d] those provisions that would have been adequate standing alone") (emphasis added); see also Spilotro, 800 F.2d at 967 ("[T]he cash and keys sought were not related in the warrant to specific crimes but rather were only a relatively insignificant part of the sweeping search for evidence of any violation of the thirteen statutes [listed in the warrant].."); 2 LaFave, supra, § 3.7(d) n.214 (stating that severability is not applicable "if probable cause existed as to only a few of several items listed, or as to a few very particularly described items but not as to other items described in much more general terms") (emphasis added). Thus, in determining whether

- 23 -

severance applies, we employ a holistic test that examines the qualitative as well as the quantitative aspects of the valid portions of the warrant relative to the invalid portions to determine whether the valid portions "make up the greater part of the warrant."

We first address the scope and weight of the catchall provision authorizing officers to search for and seize "all related fruits, instrumentalities, and evidence of the crime." Reviewing the warrant as a whole in a commonsense, practical manner indicates that the word "related" in that catchall provision corresponds primarily to the .223 firearms and ammunition rather than to the more innocuous clothing and footwear. A common sense reading of this warrant reveals, and would reveal to a reasonable officer, that the firearms and ammunition provisions were the main subject of the warrant.

Turning then to the third and fourth categories of items to be seized under the warrant in this case, we note that they authorize officers to search for and seize only one distinct type of item—either footwear or clothing. As a result, the executing officers' discretion is to some extent limited, and there is a decreased risk that the officers would mistakenly seize an item not within this description. Finally, the search for footwear and clothing does not implicate additional constitutional concerns under, for example, the First Amendment. See Voss, 774 F.2d at 405 ("The warrants' overbreadth is made even more egregious by the fact that the search at issue implicated free speech and associational rights.").

- 24 -

In light of these factors, we conclude that the valid portions of the warrant—the firearms and ammunition—and fruits, instrumentalities and evidence related to the firearms and ammunition make up "the greater part of the warrant," Naugle, 997 F.2d at 822, and, in the terms of our sister circuits, those valid portions are therefore not an "insignificant or tangential part of the warrant," George, 975 F.2d at 80 (citing Spilotro, 800 F.2d at 967-68; Freeman, 685 F.2d at 952) (cited with approval in Naugle, 997 F.2d at 822).

**E.      Sever valid portions from invalid portions and partially suppress evidence accordingly**

Having concluded that the valid portions of the warrant in this case were "sufficiently particularized, distinguishable from the invalid portions, and ma[d]e up the greater part of the warrant," Naugle, 997 F.2d at 822, we agree with the district court that severance was appropriate in this case.[7]  Under the severance doctrine, evidence seized pursuant to the invalid portions of the warrant must be

---

[7]  We note that a number of courts have concluded that the severance doctrine is not applicable where the Government has added particularized descriptions of items to be seized for which probable cause exists as a pretext to support an otherwise unlawful search and seizure under the severance doctrine. See Cook, 657 F.2d at 735 n.6; United States v. Pitts, 173 F.3d 677, 681 n.5 (8th Cir. 1999); Fitzgerald, 724 F.2d at 637; Freeman, 685 F.2d at 952; Naugle v. Witney, 755 F. Supp. 1504, 1517 (D. Utah 1990); Aday, 362 P.2d at 52. However, there is no evidence in this case that the officers added particularized, probable-cause supported items as a pretext to conduct a general search; nor does Sells make such an argument.  We therefore need not determine whether a showing of pretext eliminates application of the severance doctrine even where the valid portions of the warrant satisfy the requirements laid out in Naugle.

suppressed, but evidence seized pursuant to the valid portions of the warrant or lawfully seized during execution of the valid portions is admissible. Soussi, 29 F.3d at 572; Brown, 984 F.2d at 1077. Properly redacted, the warrant in this case permitted officers to search for and seize .223 firearms and .223 ammunition and related instruments, fruits and evidence, and the district court therefore properly upheld the seizure of these items.

Under the plain view doctrine, the district court also upheld the seizure of the "shotgun shells, pipe bomb, velcro, squibs, drill press, welding equipment, and flux." Unnamed items and "items named in an impermissibly broad portion of a warrant may nevertheless be seized pursuant to the plain view doctrine so long as the government's plain view seizure scrupulously adheres to the three-prong Horton test." Soussi, 29 F.3d at 572; see also George, 975 F.2d at 80; Fitzgerald, 724 F.2d at 637. The Horton test requires that:

> (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent—i.e. the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself.

Soussi, 29 F.3d at 570 (citing Horton, 496 U.S. at 136-37).

On appeal, Sells's only argument that the plain view doctrine does not apply in this case to permit seizure of the warrantless items is that "the invalidity of [the] warrant le[ft] no set of circumstances justifying the officer's presence on the premises" because the warrant constituted a general warrant that could not be

- 26 -

redacted. Having rejected, for the reasons stated above, the argument that severance was inappropriate in this case because the warrant constituted a general warrant, we decline to disturb the district court's conclusion upholding seizure of the warrantless items under the plain view doctrine. See Olivares-Rangel, 458 F.3d at 1112 (refusing to disturb the district court's suppression ruling under the fruits of the poisonous tree doctrine where the appellant rested its entire challenge on another ground which the court rejected).

## IV.    Application of United States v. Medlin

Prior to our adoption of the severance doctrine, we held that, "[w]hen law enforcement officers grossly exceed the scope of a search warrant in seizing property, the particularity requirement is undermined and a valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant." Medlin, 842 F.2d at 1199; see also United States v. Foster, 100 F.3d 846, 849 (10th Cir. 1996) ("[E]ven evidence which is properly seized pursuant to a warrant must be suppressed if the officers executing the warrant exhibited 'flagrant disregard' for its terms.") (quotation omitted). As a result, even where the Naugle requirements for severance are satisfied, total suppression rather than partial suppression pursuant to a redacted warrant is necessary when officers "flagrant[ly] disregard" the terms or "grossly exceed the

scope of a search warrant."[8]  Medlin, 842 F.2d at 1199; see also Pitts, 173 F.3d at

681 n.5 ("[T]he doctrine of severability does not apply when police act in bad

faith . . . ."); Maddox, 67 P.3d at 1142 ("Just as such a search taints all parts of a

warrant that was completely valid at the time of its issuance, it taints, a fortiori,

all parts of a warrant that was only partially valid at the time of its issuance.")

(citing Foster, 100 F.3d at 849; Medlin, 842 F.2d at 1199; Marvin v. United

States, 732 F.2d 669, 674-75 (8th Cir. 1984); United States v. Crozier, 777 F.2d

1376, 1381 (9th Cir. 1985); United States v. Heldt, 668 F.2d 1238, 1259 (D.C.

Cir. 1981)) (footnote omitted).

Here, the district court found no "indiscriminate rummaging or hours of

ransacking."  Nothing in the record suggests that this finding is clearly erroneous,

Gay, 240 F.3d at 1225; nor does the record suggest that any of the officers'

actions constituted the sort of "flagrant disregard" for the Fourth Amendment or

the permissible scope, duration, and intensity of the search under the redacted

warrant that would require the "extreme remedy" of total suppression.  United

States v. Le, 173 F.3d 1258, 1270 (10th Cir. 1999); see also Freeman, 685 F.2d at

953 ("Since the permissible scope, duration, and intensity of the search turns

---

[8] Although the scope of the search conducted or the items actually seized is irrelevant to our determination of whether the valid portions of the warrant make up "the greater part of the warrant," it may be relevant to our determination of whether total suppression pursuant to the officer's execution of a redacted warrant is nevertheless required.

upon the nature of the items listed in the warrant, a court which permits severance of a warrant must consider what search and seizure would have been permissible if the warrant had only named those items as to which probable cause was established.") (quotation omitted). We therefore agree with the district court that total suppression is inapplicable in this case.

## CONCLUSION

For the foregoing reasons, we affirm the district court's partial suppression order.