**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1578-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JOSEPH SUMMERS,
a/k/a OMAR LEWIS,

     Defendant-Appellant.

_____

Argued May 22, 2024 – Decided December 31, 2024

Before Judges Vernoia and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 19-10-1117.

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Peter T. Blum, of counsel and on the brief.)

Steven A. Yomtov, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Steven A. Yomtov, of counsel and on the brief.)

The opinion of the court was delivered by

WALCOTT-HENDERSON, J.S.C. (temporarily assigned)

Defendant Joseph Summers appeals from an August 24, 2022 judgment of conviction sentencing him to a seven-year term of incarceration subject to the requirements of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, following his guilty plea to first-degree aggravated manslaughter. Defendant pleaded guilty following a mistrial. He argues the court erred in denying his pre-trial motion to suppress evidence obtained from a search of his cell phone pursuant to a May 17, 2019 search warrant because the warrant is overbroad and lacked the required particularity. For the reasons that follow, we reverse and remand.

On April 6, 2019, detectives from the Hudson County Prosecutor's Office found the lifeless body of Gregory Harvey at his Jersey City home, following a report of an unresponsive man. In his appellate brief, defendant concedes that Harvey was the victim of blunt-force trauma and that when found, Harvey's body was surrounded by foam consistent with the type released from a fire extinguisher, and "a fire extinguisher was found in a nearby alleyway."

As part of their investigation, detectives reviewed surveillance videos from various locations in the vicinity of Harvey's home that showed Harvey and

defendant at a local restaurant on the morning of the murder. Harvey's wife confirmed that defendant would occasionally spend the night at Harvey's home. Another witness told police that defendant had stayed with Harvey the night before his death. Surveillance footage from the evening of Harvey's death showed defendant — who was again identified by witnesses — walking away from Harvey's home carrying a fire extinguisher. An autopsy later revealed Harvey had been struck and killed by a blunt object.

Police charged defendant with first-degree murder in violation of N.J.S.A. 2C:11-3, fourth-degree unlawful possession of a weapon in violation of N.J.S.A. 2C:39-5(d), third-degree possession of a weapon for an unlawful purpose in violation of N.J.S.A. 2C:39-4(d), and third-degree hindering apprehension by concealment of evidence in violation of N.J.S.A. 2C:29-3(b)(1).

During the homicide investigation, the State filed several communications data warrant (CDW) and search warrant applications seeking data from defendant's cell phone and service provider. Two of those ex parte applications — filed respectively on April 11, 2019, and May 17, 2019 — contained warrant-affidavits prepared and signed by Detective Bonita Martin. Only the May 17, 2019 warrant is at issue here.

The April 11, 2019 application includes Detective Martin's affidavit in support of the CDW and search warrant for "subscriber information," "call detail records," and "historical cell-site location information" from defendant's cell phone service provider from April 5, 2019, at approximately 12:01 a.m. to April 11, 2019, at approximately 6:00 a.m., around the time of Harvey's murder. The court approved the April 11, 2019 application on the same day and issued a CDW warrant for data, subscriber information, call detail records (content and data), and historical cell-site location information, including cell sites with geographical locations for the time period beginning April 5, 2019, at approximately 12:01 a.m. to April 11, 2019, at approximately 6:00 a.m. from defendant's cell phone service provider.

Several weeks later, detectives learned defendant was in Manhattan. According to Detective Aiden Stabile of the Hudson County Prosecutor's Office Homicide Unit, he and Detective Martin went to Manhattan to execute a court-authorized warrant for defendant's arrest and to attempt to interview defendant. Defendant was arrested in Manhattan and taken to a local police station where, during a recorded meeting, Detectives Stabile and Martin advised defendant of his Miranda[1] warnings and then interrogated him. The police searched

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-1578-22

defendant incident to his arrest and seized a Samsung cell phone found in his possession.

On May 17, 2019, Detective Martin filed a second warrant application and supporting affidavit for the Samsung cell phone, seeking authority to search the phone "for any and all electronically stored data, including but not limited to calls and call logs, contacts, e-mails, text messages, instant messages, photographs, videos, internet activity, wifi and internet protocol address data, and all deleted data." In addition, Detective Martin also requested CDW "data and information" from "Cellco Partnership dba Verizon Wireless, T-Mobile USA, Metro PCS, Sprint, Verizon-New Jersey, Inc., AT&T and any and all telecommunications providers subject to regulation by the Federal Communications Commission . . . ."

The affidavit supporting the May 17, 2019 application expressly incorporates Detective Martin's prior affidavits by reference, including the affidavit dated April 11, 2019. The court approved Detective Martin's May 17, 2019 application for a search warrant for the Samsung phone "known to be utilized by [defendant]." The warrant broadly authorized a search "for any and all electronically stored data" on the "cellular phone presently in the custody of the Hudson County Prosecutor's Office . . . known to be utilized by [defendant]."

5

Unlike the April 11, 2019 warrant, which had authorized a search of CDW data only during a designated time frame, the May 17, 2019 warrant did not include a temporal limitation, or any other limitation, restricting the search of any and all data on the phone. The warrant stated simply that law enforcement was authorized to search the cell phone. A search was conducted pursuant to the warrant.

On October 30, 2019, a Hudson County grand jury charged defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); third-degree possession of a weapon for an unlawful purpose, 2C:39-4(d); and third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(1).

Defendant moved to suppress the evidence obtained from the search of his cell phone, alleging–the May 17, 2019 warrant application did not support a search of all the phone's data, and, therefore, the corresponding search warrant was invalid.[2] In a Rule 104 hearing conducted on January 14, 2021, the court heard argument on defendant's motion to suppress the cell phone evidence obtained pursuant to the search warrant.

---

[2] The State moved to admit defendant's statements against him at trial and the court addressed that motion in the same Rule 104 hearing. See N.J.R.E. 104.

In its oral opinion, the court held the May 17, 2019 search warrant for defendant's phone was supported by probable cause. The court noted the surveillance footage from the day Harvey was murdered showed defendant, who had been identified by Harvey's wife and another witness, using a cell phone moments after the murder when defendant was observed leaving Harvey's home. In rejecting defendant's argument that the May 17, 2019 search warrant was an unconstitutional general warrant and overly broad, the court distinguished the facts in this case from those in <u>United States v. Winn</u>, 79 F. Supp. 3d 904 (S.D. Il. 2015), a case defendant had relied on in support of the suppression motion.

In <u>Winn</u>, the United States District Court for the Southern District of Illinois found a CDW warrant "had no valid portions" because the description of the search — "any and all files" with regard to a specific cell phone and memory card — was broader than the evidence for which the police had demonstrated probable cause to search. <u>Id.</u> at 922. The court reasoned that "any and all files" included: "the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, any system files, and any delated data." <u>Ibid.</u> The court also

A-1578-22

found that the police, however, "did not have probable cause to believe everything on the phone was evidence of the crime . . . ." Ibid.

The motion court distinguished the present case from Winn because in that case, the defendant was observed using the phone during the commission of the crime and therefore police could narrow the scope of the warrant to the timeframe they had observed defendant on the phone. The motion court therefore concluded the affidavit here supported a broad probable cause finding because it included the crime being investigated and the basis for the search of the phone, as well as a connection between the information sought and the access requested. And, the court also noted that the affidavit stated

> an examination of the cellular telephone records will assist in determining the exact date and time that the suspect may have communicated with each victim and or witnesses and a review of those text messages will reveal the nature of those communications and provide information relative to telephone users and most probably the affirmation of criminal activity.

The court also stated, "the items and information to be seized . . . [were] described with as much particularity as was warranted under the circumstances. Therefore, for these reasons, the defendant's application is denied."

Following the denial of his motion to suppress, the case against defendant proceeded to trial. Defendant's trial, however, ended in a mistrial. Defendant

later pleaded guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), and a probation violation, and the State agreed to dismiss the remaining counts in the indictment at sentencing.

The court sentenced defendant to a custodial term of seven years subject to a mandatory period of parole ineligibility under NERA and a five-year term of probation upon release on the aggravated manslaughter charge.[3] The court also sentenced defendant to a concurrent term of five-years on the prior violation of probation.

Defendant appealed, arguing the following points for our consideration:

> POINT I.
>
> THE HEARING COURT INCORRECTLY DENIED THE MOTION TO SUPPRESS THE DATA FOUND ON [DEFENDANT'S] CELL PHONE UNDER AN OVERBROAD AND UNPARTICULARIZED SEARCH WARRANT U.S. CONST. AMENDS. IV, XIV; N.J. CONST. ART. 1, ¶ 7.
>
>> A. The Warrant Was Fatally Overbroad And Unparticularized Because Evidence That [Defendant] Was Walking Away From The Scene Of A Homicide And Using His Cell Phone Did Not Provide Probable Cause To Examine "Any

---

[3] As part of his plea deal, defendant retracted his not-guilty plea to first-degree murder and pleaded to an amended charge of first-degree aggravated manslaughter with a recommended sentence in the second-degree range. See N.J.S.A. 2C:43-6(a)(2) (providing the ordinary sentencing range for a second-degree offense "shall be between five and [ten] years").

And All Stored And Observable Data" On The Phone."

B. The Remedy For This Type Of General Exploratory Warrant — Which Lacks Any Particularity And Authorizes The Police To Examine All Data — Is To Suppress All Data.

"[T]he Fourth Amendment of the United States Constitution and Article I, paragraph 7 of the New Jersey Constitution provide . . . 'no warrant shall issue except upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the papers and things to be seized.'" Marshall, 199 N.J. at 610 (quoting N.J. Const. art. I, ¶ 7). "As technological advances introduce '[s]ubtler and more far-reaching means of" privacy invasion, the judiciary is obligated "to ensure that [advance] does not erode Fourth Amendment protections.'" State v. Missak, 476 N.J. Super. 302, 316 (2023) (citing Carpenter v. United States, 585 U.S. 296, 320 (2018) (first alteration in original)).

"[S]ubstantial deference must be paid by a reviewing court to the determination of the judge who has made a finding of probable cause to issue a search warrant." State v. Evers, 175 N.J. 355, 381 (2003). Any "[d]oubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" State v. Keyes, 184 N.J. 541, 554 (2005) (quoting State v. Jones, 179

10

N.J. 377, 389 (2004)). "[W]hen the adequacy of the facts offered to show probable cause . . . appears to be marginal, the doubt should ordinarily be resolved by sustaining the search." State v. Kasabucki, 52 N.J. 110, 116 (1968) (first citing United States v. Ventresca, 380 U.S. 102, 109 (1965); and then State v. Mark, 46 N.J. 262, 273 (1966)). However, "[c]ourts [must] consider the 'totality of the circumstances' and should sustain the validity of a search only if the finding of probable cause relies on adequate facts." State v. Boone, 232 N.J. 417, 427 (2017) (quoting Jones, 179 N.J. at 388-89).

A search executed pursuant to a warrant enjoys the presumption of validity. State v. Bivins, 226 N.J. 1, 11 (2016); State v. Marshall, 199 N.J. 602, 612 (2009). The defendant bears the burden of challenging the search and must "prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" Jones, 179 N.J. at 388 (quoting State v. Valencia, 93 N.J. 126, 133 (1983)).

The particularity requirement mandates "the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." Marshall, 199 N.J. at 611 (quoting Steele v. United States, 267 U.S. 498, 503 (1925)). The use of open-ended, general warrants has been condemned as "the worst instrument of arbitrary power," Boyd v. United States,

116 U.S. 616, 625 (1886) (internal quotation omitted), and "was a motivating factor behind the Declaration of Independence," Berger v. New York, 388 U.S. 41, 58 (1967).  A search warrant affidavit "must be based on sufficient specific information to enable a prudent, neutral judicial officer to make an independent determination that there is probable cause to believe that a search would yield evidence of past or present criminal activity."  Keyes, 184 N.J. at 553.

Even in the context of a cellular phone search, a valid warrant requires "probable cause to believe that a crime has been committed, or is being committed, at a specific location or that evidence of a crime is at the place sought to be searched."  State v. Sullivan, 169 N.J. 204, 210 (2001); see also State v. Chippero, 201 N.J. 14, 28 (2009) (citation omitted) (explaining there must be "substantial evidence" supporting a court's probable cause determination "the items sought are in fact seizable by virtue of being connected with criminal activity, and . . . the items will be found in the place to be searched").  "Probable cause for the issuance of a search warrant requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'"  Chippero, 201 N.J. at 28 (quoting United States v. Jones, 994 F.2d 1051, 1056 (3d Cir. 1993)).

12

"[T]he probable cause determination must be . . . based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Marshall, 199 N.J. at 611 (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000)).  This is because "the scope of a lawful search is 'defined by the object of the search and the places in which there is probable cause to believe it may be found.'"  Ibid. (quoting Maryland v. Garrison, 480 U.S. 79, 84 (1987)).

"When reviewing a trial court's decision to grant or deny a suppression motion, '[we ordinarily] defer to the factual findings of the trial court so long as those findings are supported by sufficient evidence in the record.'"  State v. Smart, 253 N.J. 156, 164 (2023) (quoting State v. Dunbar, 229 N.J. 521, 538 (2017)).  However, "when the facts are undisputed, as they are here, and the judge interprets the law on a non-testimonial motion to suppress, our review is de novo."  Ibid. (quoting Dunbar, 229 N.J. at 538).

In denying the motion to suppress, the court stated:

> As part of their investigation, detectives located surveillance footage where [d]efendant can be seen using a cellular phone after exiting [Harvey's home] on the night of the incident.
>
> . . . .

13

Here, it was reasonable for the officers to conclude that the phone in [d]efendant's possession at the time of his arrest was the phone he was seen using in the surveillance video. Therefore, seizure and search of [d]efendant's cellphone was lawful.

Defendant argues in his brief, "[t]he warrant judge approved the application; the [May 17, 2019] warrant itself contained the authorization that detectives could 'search' the cell phone — with no limit of any kind specified." Defendant next contends the search warrant for his cell phone "was overbroad and unparticularized" and violated the probable cause and particularity requirements of the United States and New Jersey Constitutions. He argues the warrant allowed detectives to examine "any and all stored and observable data," including "a potentially massive amount of data revealing every aspect of [his] private life, perhaps going back for years." More particularly, defendant maintains that nothing about the video showing him walking away from the scene of a homicide and using his cell phone authorized such a "limitless search."

The State counters with a two-fold argument: the May 17, 2019 warrant was supported by both probable cause and with sufficient particularity to support an examination of all the data sought by law enforcement as specified in Detective Martin's affidavit; and if there was a violation of the constitutional

particularity requirement, it does not warrant suppression of all the evidence found on defendant's cell phone because under the "severability doctrine," only the evidence derived from the infirm portions of the warrant should be suppressed, while the evidence seized under its valid portions should be admitted."

Recently, in Missak, we emphasized that the burden is on the State to show the warrant application established probable cause for a search of the contents of defendant's phone. 476 N.J. Super. at 317. There, the State "established probable cause to believe the phone found in the defendant's possession contained some evidence of the crimes charged" because the offenses at issue involved the use of defendant's cell phone allegedly to solicit a sexual encounter with an individual he believed to be a fourteen-year-old girl. Id. at 320. The search warrant authorized the search of a phone's:

> stored electronic data, encrypted or password protected files/data, the assigned cellular number, cellular billing number, address book/contact(s) information, all recent calls, to include dialed, received, missed, erased calls, duration of said calls, any Internet access information, incoming and outgoing text messages, text message content, any stored pictures, stored video, calendar information, Global Positioning System (GPS) data, memory or Secure Digital Memory cards (SD cards) and any other stored information on said mobile device that will assist in the continuation of this investigation.

[<u>Id.</u> at 311.]

We acknowledged that "[d]iscerning where evidence of a crime may be found on a cellular phone is a function of complex technology . . . ." <u>Id.</u> at 319. There, we confined our analysis to "the four corners of [the Special Agent's] certification and applied fundamental tenets of constitutional law to the validity of the warrant to decide the issue presented." <u>Ibid.</u> The certification "supported the request for a warrant to search the phone's entire contents, information, and data by claiming that access was necessary to demonstrate defendant possessed and used the phone 'around the time' the phone was employed in the commission of the alleged crimes." <u>Id.</u> at 321. We found, however, the certification did not provide sufficient facts supporting the expansive search warrant because there were no facts "establishing probable cause for an examination of data and other information . . . that either predate[d]" the alleged commission of the crimes or "[did] not constitute evidence of his use of the phone 'around the time' the crimes were committed." <u>Id.</u> at 321-22.

We note the voluminous amount of private information that is stored on a cellular phone. <u>See, e.g.</u>, <u>Carpenter</u>, 585 U.S. at 320 (noting the judiciary is obligated "to ensure that [technological advance] does not erode Fourth Amendment protections"); <u>United States v. Stabile</u>, 633 F.3d 219, 241 n.16 (3d

16

Cir. 2011) (alteration in original) (quoting United States v. Comprehensive Drug Testing, 621 F.3d 1162, 1178 (9th Cir. 2010) (Callahan, J., concurring in part and dissenting in part)) (explaining "[a] measured approach based on the facts of a particular case is especially warranted in the case of computer-related technology, which is constantly and quickly evolving"); Facebook, Inc. v. State, 471 N.J. Super. 430, 464 (App. Div. 2022) (quoting State v. Earls, 214 N.J. 564, 588 (2013)) (noting our law "evolve[s] . . . in response to changes in technology"); People v. Hughes, 958 N.W.2d 98, 111-21 (Mich. 2020) (citation omitted) (discussing the numerous and complex legal issues implicated by a search of electronic data, including the permissible scope of a warrant for electronic data; explaining the propriety of an officer's "search of seized digital data" requires consideration of "whether the forensic steps of the search process were reasonably directed at uncovering the evidence specified in the search warrant"; and detailing factors that should be considered in determining whether the search was reasonably directed at uncovering evidence specified in a warrant).

Here, detectives obtained the warrant based on the following facts: decedent's body was found on the floor of his apartment; an autopsy revealed wounds evidencing blunt force trauma; decedent's body was surrounded by foam

17

that appeared to be from a fire extinguisher; defendant occasionally stayed with decedent; and surveillance footage from the evening of the homicide showed defendant walking away from the scene, allegedly carrying a fire extinguisher; and other surveillance footage shows defendant talking on his cell phone while moving away from the location of the homicide. Moreover, at the time detectives sought to secure the May 17, 2019 search warrant, they were aware of defendant's relationship with Harvey and that defendant had left Harvey's home carrying a fire extinguisher, which could have been used to cause the death, and apparently left the area where the murder occurred and was later found in a shelter in Manhattan approximately two weeks after the murder. Detectives, however, were unaware of who defendant had been communicating with, and knew only that he was observed using his cell phone.

Applying the applicable standard of review and legal principles, we are persuaded that the evidence derived from the search made pursuant to the May 17, 2019 search warrant must be suppressed. We reach this determination based on the breadth of the express language of the warrant, which authorized law enforcement officers unfettered and unrestricted access to search defendant's phone for any and all information, data and the like, for which the State had

failed to establish probable cause. In fact, the warrant granted authority to search defendant's phone without any limitations, temporal or otherwise, at all.

We note the complexity of the digital landscape "presented by data contained in cellular phones, the manner in which such data may be searched and retrieved, and the constitutional issues presented by law enforcement's efforts to traverse the landscape in search of evidence." Missak, 476 N.J. Super. at 319. And, irrespective of the fact that the affidavit in support of the warrant application "described in sufficient detail how cell phones are used and how [a search of the cell phone] can result in data which is relevant to a criminal investigation," the warrant itself must identify the location on the phone where data and information possibly stored on defendant's phone may be found based on the probable cause established in the search warrant affidavit. Marshall, 199 N.J. at 611 (stating "the description [of where to find the information sought by the warrant] is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended").

We are further persuaded that the May 17, 2019 warrant is not supported by probable cause for the authorized expansive and limitless search of defendant's phone and data. We note that by May 17, 2019, law enforcement knew the timeframe of Harvey's murder and had the surveillance footage of

defendant leaving Harvey's residence using his cell phone. With this information, law enforcement officers and the court had, at a minimum, the facts necessary to properly limit the temporal scope of the May 17, 2019 warrant. See Jones, 179 N.J. at 388. They did not.

Although a search warrant enjoys a presumption of validity, Bivins, 226 N.J. at 11, because the warrant in this case authorized a search for all data from defendant's cell phone, we are convinced it is constitutionally invalid. See, e.g., Winn, 79 F. Supp. 3d at 922 (finding a CDW "had no valid portions" because the description of the search — "any and all files" — was broader than the evidence over which the police had probable cause); Burns v. United States, 235 A.3d 758, 774 (D.C. 2020) (finding invalid warrants that broadly "authorized the seizure of 'any evidence' on the phones and listed, by way of examples, generic categories covering virtually all of the different types of data found on modern cell phones").

The State also argues that when a portion of a search warrant is constitutionally infirm, "primarily due to a lack of particularly or probable cause, it is separated from the remainder and the evidence seized under the valid portion admitted," citing United States v. Galpin, 720 F.3d 436, 448 (2d Cir. 2013); United States v. Sells, 463 F.3d 1148, 1150 (10th Cir. 2006), cert. denied,

549 U.S. 1229 (2007). Both the State and defendant rely on United States v. Sells, 463 F.3d 1148, 1150 (10th Cir. 2006), in discussing the severability doctrine and whether there are any valid portions of a warrant could be severed from the invalid portions.

The 10th Circuit, in Sells, articulated a three-prong test to determine whether "[t]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to [that] part of the warrant, but does not require the suppression of anything described in the valid portions . . . ." Ibid. Severance is available only if (1) the search warrant "describes with sufficient particularity items to be seized for which there is probable cause"; (2) the valid portions of the warrant "are distinguishable from the invalid portions"; and (3) the valid portions of the warrant "make up the greater part of the warrant." Id. at 1155. Because we have found the warrant here invalid in its entirety based on a lack of probable cause supporting its unbridled breadth, and the warrant does not distinguish between the clearly invalid search authorization from any portion of it the State claims is valid, we need not further address the State's severability arguments under Sells.

Accordingly, the court's order denying suppression is reversed and the case is remanded to allow defendant the opportunity to withdraw his plea and

21

for such other proceedings as may be appropriate based on the suppression of the evidence seized from the cell phone.  We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22