FILED
United States Court of Appeals
Tenth Circuit

May 28, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

THOMAS J. CASSADY,

      Plaintiff-Appellee,

v.

STEVEN E. GOERING, individually and as
Sheriff of Kit Carson County, Colorado,

      Defendant-Appellant,

and

WILLIS E. BODEN, individually and as Deputy
Sheriff of Kit Carson County, Colorado,

      Defendant.

No. 07-1092

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:03-CV-1008-WDM-PAC)**

---

Robert M. Liechty (Jonathan A. Cross with him on the briefs) of Cross & Liechty,
P.C., Denver, Colorado, for Defendant-Appellant.

Peter R. Bornstein of Denver, Colorado, for Plaintiff-Appellee.

---

Before **MURPHY**, **SEYMOUR** and **MCCONNELL**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Thomas J. Cassady brought this § 1983 action against Steven E. Goering. Mr. Cassady alleged Sheriff Goering violated his Fourth Amendment right to be free from unreasonable searches and seizures. A jury found for Mr. Cassady at the first trial, but he was awarded a new trial due to a prejudicially low damages award. Sheriff Goering filed a Rule 50(b) Motion for Judgment as a Matter of Law and Renewed Motion Based on Qualified Immunity. He appeals the district court's amended order rejecting his qualified immunity claim. Because the warrant permits a general search and seizure of "all other evidence of criminal activity," we hold it was a general warrant prohibited by the Fourth Amendment. Accordingly, we affirm the denial of qualified immunity.

## I.

The incident that gave rise to the search and seizure at issue involved a dispute between Mr. Cassady and Gary Queen over grain owned by Mr. Queen and stored on Mr. Cassady's farm in Kit Carson County, Colorado.[1]  Mr. Cassady

---

[1] Mr. Goering submitted this appeal following a week-long jury trial, but provided only snippets of the trial transcript. He included excerpts of the direct examination of two witnesses, but omitted the cross-examination of those witnesses and the testimony of other key witnesses, such as himself and Mr. Cassady. The parts of the testimony he did provide are so choppy it is often difficult to discern the subject matter of the question and the witness' full answer. Even the courtroom minutes are not included in full, so we do not know who testified at trial.

It is the appellant's responsibility to provide the record. *See* 10th Cir. R.

(continued...)

attempted to cut off Mr. Queen's access to the grain, claiming that Mr. Queen had

not paid for the storage, which led to a physical altercation between Mr. Cassady

and Mr. Queen. Both parties called the police – Mr. Cassady requesting help to

remove Mr. Queen from his farm, and Mr. Queen reporting that Mr. Cassady had

assaulted him after he saw marijuana plants on the property.

Sheriff Goering responded to the call, with Deputy Sheriff Willis Boden

joining him. Mr. Queen told Sheriff Goering that he had seen marijuana plants

inside a quonset hut on Mr. Cassady's farm, that Mr. Cassady had attacked him,

and that he had seen a handgun in Mr. Cassady's truck. Mr. Queen did not have

any visible injuries.

Although Mr. Cassady, unlike Mr. Queen, was suffering from visible

---

[1](...continued)
30.1(A)(1) ("The appellant must file an appendix sufficient for considering and deciding the issues on appeal."); 10th Cir. R. 10.3(A) ("Counsel must designate a record on appeal that is sufficient for considering and deciding the appellate issues."); *see also Travelers Indem. Co. v. Accurate Autobody, Inc.*, 340 F.3d 1118, 1119 (10th Cir. 2003) ("A party who seeks to reverse the decision of a district court must provide an adequate record for this court to determine that error was committed."); *Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949, 955 (10th Cir. 1996) ("An appellant who provides an inadequate record does so at his peril."). Mr. Goering's lack of evidence is particularly odd given his argument that he could not file an interlocutory appeal prior to the first trial, after the district court denied his summary judgment motion, because there were questions of fact for the jury to decide before the record would be complete. *See* Aplt. Br. at 4. While Mr. Goering makes numerous references to the trial record and what it purportedly supports, we are unable to confirm these assertions because he did not provide the full trial transcript. The facts are therefore taken primarily from the district court's July 21, 2005 order denying Mr. Goering's Motion for Summary Judgment.

injuries, Sheriff Goering determined there was probable cause to arrest Mr. Cassady. After placing him under arrest, the officers conducted a "security sweep" of the open areas and buildings on the farm, but did not search the locked quonset hut.

Sheriff Goering directed Deputy Boden to obtain a search warrant while he remained behind at the farm. Boden had never before sought a drug-related search warrant. He admitted to not knowing what he was doing, so he requested help from an officer in another police department who had experience with drug-related investigations. After obtaining the warrant, the officers searched the farm and found a large marijuana operation. Sheriff Goering contacted the Drug Enforcement Administration ("DEA"), and he arranged for his own officers to watch the farm overnight. He allowed Mr. Queen to come onto the farm and take his grain, despite his knowledge that Mr. Cassady and Mr. Queen were in a dispute over its ownership. The DEA agents arrived the following morning and Sheriff Goering remained on the farm while the DEA agents conducted the search.

The district court described the state of the farm upon Mr. Cassady's return:

> When Cassady returned home, the farm was a mess. His house had been ransacked, there was trash and his personal property on the floor, newly hatched chicks had been killed by being removed from their incubators, and most of his poultry was missing. Additionally, coolers in the Quonset hut were destroyed, food in its freezers had

-4-

rotted, and insulation had been torn out of its wall.

Summary Judgment Order, July 21, 2008, Aplt. App. at 11-12. Sheriff Goering

and his team appear to be primarily responsible for the damage to Mr. Cassady's

property, as the jury apparently found. DEA Agent Martenson testified at trial, "I

didn't actually search the residence. It had already been searched." Aplt. App. at

78. The "local officers" were the ones who searched the house, although "the

DEA m[ight] have helped a little bit, as well." *Id.* We do not have the testimony

of other law enforcement officers on this issue due to Mr. Goering's failure to

provide the full transcript of the trial.

In the related criminal proceeding against Mr. Cassady, the district court –

with a different judge presiding – found the search unlawful and ordered all

evidence obtained from it suppressed. Amended Order Granting Defendant's

Motion to Suppress, October 23, 2002, Aplt. App. at 6. In that proceeding, the

court held (1) there was no probable cause for the search and seizure; (2) the

search warrant was overbroad and exceeded the scope of probable cause in the

affidavit; and (3) the "good faith" exception did not apply. *Id.*

In the present civil proceeding from which this appeal was taken, the

district court granted Sheriff Goering qualified immunity with regard to Mr.

Cassady's arrest, but denied it with regard to the search warrant, holding it

overbroad and its execution unlawful. Following a jury verdict for Mr. Cassady,

Sheriff Goering filed a Rule 50(b) Motion for Judgment as a Matter of Law and

Renewed Motion Based Upon Qualified Immunity. The district court denied the

motion, reiterating its reasoning in the summary judgment order and concluding

that "the law was clearly established in this circuit that such an overly broad

warrant was unconstitutional" and that "there was a legally sufficient evidentiary

basis for a reasonable jury to find for the jury [sic] on his civil rights claim

against defendant Goering." Amended Order, February 15, 2007, Aplt. App. at

105-106. The district court noted,

> The facts presented to the jury included an overly broad search warrant, damage done to plaintiff's property beyond that necessary to take possession of marijuana plants, damage to areas that were not involved in the marijuana grow and a tolerance by defendant Goering of individuals' access to plaintiff's property while defendant Goering was the supervising law enforcement officer on the premises.

*Id.* at 106. The district court also determined the jury had arrived at a

compromise verdict and accordingly granted Mr. Cassady's motion for a new trial

on the § 1983 and trespass claims, a determination not before us.


**II.**

At issue in this case is Sheriff Goering's entitlement to qualified immunity

prior to a retrial. Mr. Cassady asserts that Mr. Goering lost or waived his right to

an interlocutory appeal of the denial of qualified immunity. He does not provide

us with authority for this proposition, however. While Mr. Cassady is correct that

"[t]he Supreme Court has repeatedly stressed the importance of resolving the

qualified immunity question at the earliest possible stage in the litigation[,]" Aple. Br. at 1, this rule is for the benefit of the party asserting a qualified immunity defense. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (noting that one purpose of resolving qualified immunity early in the litigation is "to avoid subjecting government officials either to the costs of trial or to the burdens of broad-reaching discovery" (internal quotation marks and alteration omitted)); *Saucier v. Katz*, 533 U.S. 194, 200 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."). We have never held that a qualified immunity ruling is unreviewable following a trial, and we have allowed defendants to reassert qualified immunity claims post-trial where there were factual disputes requiring a jury determination. *See Maesta v. Lujan*, 351 F.3d 1001, 1008-10 (10th Cir. 2003). Here, Mr. Goering is facing a retrial and we see no reason why he should be prohibited from appealing the post-trial order rejecting his qualified immunity claim.

## III.

We apply a *de novo* standard of review to the denial of a summary judgment motion raising a question of qualified immunity. *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001). "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet

-7-

a strict two-part test." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). The plaintiff must show (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct. *Gross*, 245 F.3d at 1155-156. We review the evidence in the light most favorable to the nonmoving party. *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). These standards are equally applicable here, where the district court denied Mr. Goering's renewed motion as a matter of law.

### *Constitutional Violation*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The warrant requirement has at least two distinct purposes:

> First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. The warrant accomplishes this second objective by requiring a 'particular description' of the things to be seized.

*Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971) (citations omitted). As we have previously explained, "the fourth amendment requires that the government

describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized." *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (internal quotation marks omitted).[2]  Thus, the "particularity requirement" prevents general searches and strictly limits the discretion of the officer executing the warrant.  *See Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985) ("The particularity requirement ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause."); *see also United States v. Janis Indus.*, 48 F.3d 1548, 1553 (10th Cir. 1995) ("As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." (quoting *Stanford v. Texas*, 379 U.S. 476, 485 (1965))).

The warrant here is ungrammatical and difficult to read in many respects. It authorized the search of the entire farm, including Mr. Cassady's house, and the seizure of "[a]ny & all narcotics," "[a]ny and all illegal contraband" and various specific items mostly related to a narcotics operation.  *See* attached Ex. A.  In addition, however, and most damaging to Mr. Goering's argument, the warrant

---

[2] We have recognized this rule from *Leary* as the governing standard for assessing whether a warrant satisfies the Fourth Amendment's particularity requirement.  *See*, *e.g.*, *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005).

expressly permitted the search and seizure of "all other evidence of criminal activity" as well as personal property that was stolen, embezzled, or otherwise illegal; or was designed, intended, or had been used to commit a criminal offense; or would be material evidence in a criminal prosecution in Colorado or any other state; or the seizure of which was expressly required, authorized, or permitted by any Colorado statute. *Id.* Hence, the warrant did not confine the scope of the search to any particular crime. The officers only had probable cause to search for evidence related to marijuana cultivation, yet the warrant authorized the seizure of *all* possible evidence of *any* crime in *any* jurisdiction. Consequently, "[t]he warrant[] allowed precisely the kind of rummaging through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all, that the fourth amendment proscribes." *Voss*, 774 F.2d at 405.

The affidavit, which was incorporated by reference, does not save the warrant. *See* attached Ex. B. The only grounds it provides are Queen's statement that he saw marijuana plants on the farm, and Mr. Cassady's 1992 arrest for a marijuana-related offense. It makes no mention of the affiant's training or expertise in narcotics investigations,[3] and it is no more particular than the

_____

[3] Indeed, the affiant did not have any experience in narcotics investigations, and had never before written a warrant for a drug-related search. *Compare*, *e.g.*, *United States v. Wicks*, 995 F.2d 964, 967, 973 (search warrant issued for specific items of records and contraband likely to be found in relation to drug operation after affiant stated "his experience in investigating drug

(continued...)

-10-

warrant, containing virtually identical language describing the items to be seized.

We cannot accept Mr. Goering's argument that the officers understood the language permitting seizure as limited to evidence of marijuana-related activities only.[4] We have previously invalidated warrants substantially more particularized than the one at issue here. *See Leary*, 846 F.2d at 594, 601 (holding impermissibly overbroad a warrant authorizing search of company offices and seizure of all records and communications "relating to the purchase, sale and illegal exportation of materials" in violation of federal export laws); *Voss*, 774 F.2d at 405 (holding impermissibly overbroad a warrant in tax fraud investigation authorizing the seizure of all business records). It is not enough that the warrant makes reference to a particular offense; the warrant must "ensure[] that [the] search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Voss*, 774 F.2d at 404. As we explained in *United States v. Le*, 173 F.3d 1258, 1275 (10th Cir. 1999), "[t]he difference between a valid warrant and an overbroad warrant lies in

---

[3](...continued)
trafficking crimes and enumerated the types of evidence of unlawful activity he would expect to find . . . based on his training, [and] experience.") (quotation marks omitted).

[4] Mr. Goering asserts that we should ignore the warrant's overbroad language in part because officers did not look for other evidence of criminal activity. To the contrary, the DEA agent testified that in addition to searching for evidence pertaining to the marijuana grow, he was also searching for "[a]ll other evidence of criminal activity." Aplt. App. at 76.

whether the government could have phrased the warrant more specifically." This is simply not a case where "[i]t is difficult to imagine how the . . . warrant could have been phrased more specifically." *Id.* We conclude that the warrant here – just as in *Leary* – is "overbroad in every respect," as it "contains no limitation on the scope of the search, [and] it is not as particular as the circumstances would allow or require. . . ."[5] 846 F.2d at 605-06; *see also Voss*, 774 F.2d at 405 (concluding warrant did not satisfy particularity requirement because "[i]t authorized government agents to rummage through all of [defendant's records] seeking any information pertaining to any federal crime"). Thus, because the warrant authorizes a general search, it is overbroad and invalid.

Mr. Goering contends "[t]here is no constitutional violation merely because of words in a warrant where there is no resulting unconstitutional search." Aplt. Br. at 21. Even assuming the general rummaging that apparently occurred here could conceivably be characterized as a "constitutional" search, it is well-settled that "mere words" in a warrant in and of themselves can violate the Fourth Amendment. In *Groh v. Ramirez*, 540 U.S. 551 (2004), the Supreme Court rejected the argument that a lawfully conducted search could be reasonable under the Fourth Amendment despite an invalid warrant:

---

[5] That the officer drawing up the warrant appeared to use stock language in no way excuses the warrant's overbreadth. In fact, it seems the officer took a form warrant that could be applied to almost any crime and added language but deleted nothing, thereby creating an extremely broad warrant.

We have clearly stated that the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant. . . . The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional.

*Id.* at 559-60 (internal quotation marks and citations omitted). Thus, Mr. Goering's attempt to separate the authorization of the search from the execution of the search is a red herring – a violation of the warrant requirement is itself a violation of the Fourth Amendment.

The Supreme Court in *Groh* explained why an unconstitutional warrant cannot be saved by a reasonable search: "Even though petitioner acted with restraint in conducting the search, 'the inescapable fact is that this restraint was imposed by the agents themselves, not by a judicial officer.'" *Id.* at 561 (quoting *Katz v. United States*, 389 U.S. 347, 356 (1967)). The Court continued, "We have long held . . . that the purpose of the particularity requirement is not limited to the prevention of general searches. A particular warrant also assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Id.* (internal citation and quotation marks omitted); *see also McDonald v. United States*, 335 U.S. 451, 455 (1948) ("We are not dealing with formalities. The presence of a search warrant serves a high function."). Again, there were no such limits here: the warrant permitted officers to search for *all* evidence of *any* crime.

-13-

Mr. Goering urges us to apply the severability doctrine, traditionally applied in the criminal context, whereby the invalid parts of a warrant are severed from the valid parts and suppression is only required for those items seized pursuant to the invalid parts. *See United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir. 1993) (adopting severability doctrine); *see also United States v. Sells*, 463 F.3d 1148, 1153 (10th Cir. 2006) (applying severability doctrine); *United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993) (same). Without providing any authority for the proposition, Mr. Goering contends the severability doctrine can be applied to this civil case to "cure" the unlawful parts of the warrant. Because we conclude that the severability doctrine would not apply here even if this appeal were from a criminal suppression hearing, we need not decide whether the doctrine is applicable in a civil context. The rule in this circuit in criminal cases is that the severability doctrine is only applicable if "the valid portions of the warrant [are] sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." *Naugle*, 997 F.2d at 822; *see also Sells*, 463 F.3d at 1151.

The dissent's contention that our early cases did not address the "greater part of the warrant" requirement is a stretch. *See* Dissent at 3. *Brown* did address the limitation at issue here, noting that "although one sentence of the warrant may have been overbroad, the infirm part may be isolated and severed from the constitutionally adequate part." 984 F.2d at 1078. That is precisely the question

-14-

here–whether the warrant is so overbroad that it is functionally impossible to isolate and sever the acceptable portion. With respect to the severance in *Brown*, the crime for which there was probable cause to search was the possession and prior sale of stolen property. 984 F.2d at 1075-77. The warrant specifically itemized certain pieces of stolen property and then added "[a]ny other item which the officers determine or have reasonable belief is stolen while executing this search warrant." *Id.* at 1076. We held the last sentence was overbroad but that the specified items were searchable. A sentence authorizing a search for all other items which are stolen is considerably more confined than one authorizing a search for "all other evidence of criminal activity," as the warrant in this case does. In *Leary*, we noted that "severance is not always possible." 846 F.2d at 606 n.25 (citation omitted). In so doing, we cited *United States v. Christine*, 687 F.2d 749, 759 (3d Cir. 1982), for its rule that "all evidence seized pursuant to a general warrant must be suppressed." *Id.*

In *Sells*, 463 F.3d at 1155-1161, we provided an extensive, multi-step analysis for determining when the severability doctrine may be applied. After dividing the warrant into sections, we evaluate the constitutionality of each part. *See id.* at 1155-1157. If at least one part passes constitutional muster (*i.e.*, is sufficiently particularized and supported by probable cause), we determine whether the valid sections are distinguishable from the invalid sections. *Id.* at 1158. As we explained in *Sells*, "[t]he mere fact that one or more parts of a

-15-

search warrant are valid, however, does not mean that the severance doctrine is *automatically* applicable. Instead, . . . some part of the warrant must be *both* constitutionally valid *and* distinguishable from the invalid portions in order for severability to apply." *Id.* (internal quotation marks omitted) (emphasis in original). Severance is permissible where "each of the categories of items to be seized describes distinct subject matter in language not linked to language of other categories, and each valid category retains its significance when isolated from rest of the warrant." *Id.* Notably, this does not end the inquiry, however: "[t]otal suppression may still be required even where a part of the warrant is valid (and distinguishable) if the invalid portions so predominate the warrant that the warrant in essence authorizes a general, exploratory rummaging in a person's belongings." *Id.* (internal quotation marks omitted).

Applying the approach laid out in *Sells* to the case at hand, we begin by dividing the warrant into "individual phrases, clauses, paragraphs, or categories of items." *Id.* at 1155. The warrant here can be divided into three general parts: (1) the section authorizing seizure of narcotics and related illegal contraband;[6] (2)

---

[6]

*Any & all narcotics, to wit; marijuana plants and/or marijuana*, which is a schedule I controlled substance. *Any and all illegal contraband including, but not limited to*; hydroponic grow lights & meters, watering systems, food, timers, containers, CO2 cylenders [sic], guages [sic] & testers, grow type mediums, exaust [sic] fans, fertalizer [sic], pruning equipment, any & all U.S. currency and/or

(continued...)

-16-

the section authorizing seizure of all other evidence of criminal activity;[7] and (3)

the section authorizing seizure of Mr. Cassady's personal property if its seizure is

authorized on a number of enumerated grounds totally unrelated to a narcotics

operation.[8]  Only the first of these sections – directing officers to seize "[a]ny &

---

[6](...continued)
financial instruments, precious metals, jewelery [sic], *other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment* and/or expenditure *of money, records of transactions, records of plant growth, books, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing, and distribution of controlled substances, in particular a Schedule I controlled substance, to wit: marijuana.  Further, any scales, measuring devices which indicaye [sic] distribution of controlled substances, and/or other narcotics.  Further, computers*, computer generated printouts, computer programs pertaining to financial transactions *and/or computer discs where computer generated information pertaining to narcotic information storage for later recovery.*
Ex. A (emphasis added).

[7] "And all other evidence of criminal activity."  Ex. A.

[8]
and [sic] articles of personal property tending to establish the identity of the person or persons in control or possession of the place or vehicle, including but not limited to, utility company receipts, rent receipts, cancelled mail envelopes, vehicle registration, credit card receipts, repair bills, photographs, keys and articles of clothing, believed to situated at the place, in the vehicle or on the person known or described as: Unincorporated Kit Carson County, State of Colorado; upon one or more of the grounds set forth in the Colorado Revised Statues and the Colorado Rules of Criminal Procedure, namely; that this *property is stolen or embezzled*; or *is designed or intended for use as a means of committing a criminal offense*; or is or has been used as a means of committing a criminal offense; or the possession of which is illegal; *or would be material evidence in a*
(continued...)

-17-

all narcotics, to wit; marijuana plants, and/or marijuana" and illegal contraband related to marijuana distribution – is arguably valid. And this is true only if we assume that everything in the sentence beginning, "Any and all illegal contraband including but not limited to," is meant to be narrowed by a requirement that the illegal contraband be related "to the transportation, ordering, purchasing, and distribution of controlled substances, in particular a Schedule I controlled substance, to wit: marijuana," which appears at the end of this convoluted sentence. *See* note 6, *supra*. It is even a greater stretch to narrow the inclusion in the middle of this long sentence of "any & all U.S. Currency and/or financial instruments, precious metals, jewelery [sic]," when the phrase preceding the narrowing clause at the end of the sentence is "and other *papers* relating to" a controlled substance. Ex. A (emphasis added). Even assuming we view the reference to "contraband" narrowly as contraband related to a marijuana operation, which is supported by the crime for which there was probable cause, severance would still be improper in this case for the following reasons. *Id.*

The second and third sections are clearly invalid. The second section expressly permits seizure of "all other evidence of criminal activity," without any

---

[8](...continued)
*subsequent criminal prosecution in this state or another state; or the seizure of which is expressly required, authorized or permitted by any statute of this state*.
Ex. A (emphasis added).

limitation or reference to a specific crime. *Id.* The third section authorizes

seizure of

> articles of personal property tending to establish the identity of the person or persons in control or possession of the place or vehicle . . . *[upon the grounds] that this property is stolen or embezzled; or is designed or intended for use as a means of committing a criminal offense*; or is or has been used as a means of committing a criminal offense; or the possession of which is illegal; or would be material evidence in a subsequent criminal prosecution in this state or another state; or the *seizure of which is expressly required, authorized or permitted by any statute of this state*.

*Id.* (emphasis added).[9] Neither section is linked in any way to marijuana

cultivation; instead, both sections appear intended to give officers as few limits as

possible. "Mere reference to 'evidence' of a violation of a broad criminal statute

or general criminal activity provides no readily ascertainable guidelines for the

executing officers . . . . As a consequence, authorization to search for 'evidence

of a crime,' that is to say, any crime, is so broad as to constitute a general

warrant." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992) (citations

omitted) (holding warrant authorizing search of "any other evidence relating to

---

[9] If the dissent's reading of this section of the warrant is correct and the last half of this paragraph modifies the entire warrant instead of just the preceding sentences, *see* dissent at 10-12, this fact only adds further support to our conclusion that the warrant cannot be saved. Under the dissent's reading, officers not only had permission to search for "any [] evidence of criminal activity," but could conduct this search and seizure pursuant to any one of the seven listed grounds, effectively permitting search for any evidence of any crime in any state. We note that the dissent does not point us to any case upholding a warrant with such language.

the commission of a crime" overbroad).

In sum, then, the warrant contains one mostly valid and two invalid sections.[10] While the severance analysis does not end with a "mere counting of provisions," *Sells*, 463 F.3d at 1158, the "number of valid versus invalid provisions is one element in the analysis of which portion makes up the greater part of the warrant," *id.* at 1159 (internal quotation marks omitted).

We next assess whether the valid section is sufficiently distinguishable from the invalid sections. *See id.* at 1158. Setting aside the warrant's significant grammatical flaws–which make the warrant exceedingly difficult to decipher – the section we assume to be valid does seem to be distinguishable from the invalid sections. Nevertheless, the warrant still fails the final step in the analysis, which requires us to determine whether the warrant's valid parts comprise a greater part of the warrant than the invalid parts. *See id.*[11] We apply a "holistic test" and

---

[10] The dissent criticizes our grouping of the first 162 words into one part and the next seven words into a separate part. *See* dissent at 8. This misses the point, however: those seven words–"And all other evidence of criminal activity"–might as well be 162 words, or 1,062 words, or however many words it would take to describe what "all other evidence of criminal activity" would consist of. That is, if the warrant had listed all the items possibly subject to search and seizure under the catchall phrase, the 162-word description of narcotics and associated contraband would seem "minor" in comparison. In any event, our conclusion stands regardless of whether the warrant is divided by paragraphs and categories of items, as we have attempted to do, or into clauses of approximately equal length, as the dissent urges. *See* dissent at 9.

[11] Mr. Goering's focus on the items actually seized is misplaced. *See Sells*, 463 F.3d at 1159 ("The 'greater part of the warrant' analysis focuses on the

(continued...)

"evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant." *Id.* at 1160. As we explained in *Sells,* "[t]his analysis ensures that severance does not render the Fourth Amendment's warrant requirement meaningless." 463 F.3d at 1151. The dissent's analysis entirely ignores *Sells'* instruction to conduct a holistic analysis, and instead focuses exclusively on whether the warrant's valid sections constitute its greater part in the quantitative sense. As we said in *Sells*:

> [M]erely counting parts, without any evaluation of the practical effect of those parts, is an improperly "hypertechnical" interpretation of the search authorized by the warrant. *See Gates*, 462 U.S. at 236, 103 S.Ct. 2317. We conclude that it is not an adequate basis by itself for determining whether a warrant's invalid parts render a warrant, as a whole, general, which is the underlying consideration in our "greater part of the warrant" analysis. A warrant's invalid portions, though numerically fewer than the valid portions, may be so broad and invasive that they contaminate the whole warrant. Conversely, the invalid portions, though numerically greater than the valid portions, may qualitatively contribute less than the valid portions to the overall scope of the authorized search. Common sense indicates that we must also evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant. *See Voss v. Bergsgaard*, 774 F.2d 402, 406 (10th Cir.1985) (declining to employ the severance doctrine where "[t]he bulk of the warrant's provisions . . . simply allow[ed] for the seizure of evidence, whether or not related to tax fraud, and largely subsume[d] those provisions that would have been adequate standing alone") (emphasis added); see also *Spilotro*, 800 F.2d at 967 ("[T]he cash and keys sought were not related in the warrant to specific crimes but rather were only a relatively insignificant part of the sweeping search for evidence of any

---

[11](...continued)
warrant itself rather than upon an analysis of the items actually seized during the search.").

violation of the thirteen statutes [listed in the warrant]."); 2 LaFave, supra, § 3.7(d) n. 214 (stating that severability is not applicable "if probable cause existed as to only a few of several items listed, or as to a few very particularly described items but not as to other items described in much more general terms "). Thus, in determining whether severance applies, we employ a holistic test that examines the qualitative as well as the quantitative aspects of the valid portions of the warrant relative to the invalid portions to determine whether the valid portions "make up the greater part of the warrant."

*Id.* at 1160.

Here, the invalid portions of the warrant are sufficiently "broad and invasive" so as to "contaminate the whole warrant." *Id.* at 1151. As in *Voss*, the warrant's invalid provisions "allow for the seizure of evidence, whether or not related to [marijuana possession and distribution], and largely subsume those provisions that would have been adequate standing alone." 774 F.2d at 406. The warrant epitomizes a general warrant, and the officers treated it as such. *See* note 4, *supra*.

Neither Mr. Goering nor the dissent point us to even one case where the severability doctrine has been applied to a warrant containing such a broad and invasive provision authorizing a search for and seizure of any and all evidence of criminal activity which is wholly unrelated to the crime for which there was probable cause. As we have stressed, severance is not appropriate in every case. *See Sells*, 463 F.3d at 1155; *Naugle*, 997 F.2d at 822; *see also* 2 W. LaFave, *Search and Seizure*, § 3.7(d) n.214 (4th ed. 2004) (noting severability is improper where "probable cause existed as to only a few of several items listed, or as to a

-22-

few very particularly described items but not as to other items described in much more general terms"). In fact, "every court to adopt the severance doctrine has further limited its application to prohibit severance from saving a warrant that has been rendered a general warrant by nature of its invalid portions despite containing some valid portion." *Sells*, 463 F.3d at 1158.[12] For all of these reasons, it would be inappropriate to apply the severability doctrine to save the warrant in this case.

The dissent latches onto one line of dicta from a footnote in a case not squarely addressing the severability doctrine[13] and seeks to overrule the clear rule of this circuit, established in *Naugle* and followed in *Sells*, which provides that severability is only applicable where "the valid portions of the warrant [are] sufficiently particularized, distinguishable from the invalid portions, and make up

---

[12] For examples of courts declining to apply the severability doctrine, *see, e.g., United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995) (refusing to apply severability where only one of the categories of items to be seized was not overbroad); *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir. 1986) (refusing to sever where specifically described items "were only a relatively insignificant part of the sweeping search for evidence of any violation of the thirteen [criminal] statutes"); *United States v. Patrick*, 916 F. Supp. 567, 574 (N.D. W.Va. 1996) (declining to apply severability doctrine where "valid portion of the warrant is a relatively insignificant part of an otherwise invalid search"); *United States v. Marcus*, 807 F. Supp. 934, 937 (E.D.N.Y. 1992) (declining to sever warrant because valid portions of warrant "ma[de] up only an insignificant or tangential part of the warrant").

[13] *See* dissent at 3. The question presented in *United States v. Soussi*, 29 F.3d 565, 572 (10th Cir. 1994), the case on which the dissent relies, was whether items seized pursuant to an invalid portion of a warrant could be admitted under the plain view doctrine, an issue not before us.

the greater part of the warrant." *Naugle*, 997 F.2d at 822; *Sells*, 463 F.3d at 1150-51.  As an initial matter, we do not see how *Soussi's* "at least a substantial part of the warrant," *Soussi*, 29 F.3d at 568 n.3,[14] formulation is any less subjective than the "greater part of the warrant" formulation from *Naugle* and *Sells*.  Accordingly, each of the dissent's criticisms –*i.e.*, that the rule offers few guidelines and that it is difficult for courts to weigh parts of the warrant against each other, see dissent at 18-19–would apply equally to the *Soussi* test.  Moreover, the facts of this case still would not justify application of the severability doctrine even under the test urged by the dissent because under the long-established rule general warrants cannot be saved.  *See Sells*, 463 F.3d at 1148 ("[A]lthough articulated in varying forms, every court to adopt the severance doctrine has further limited its application to prohibit severance from saving a warrant that has been rendered a general warrant by nature of its invalid portions despite containing some valid portion.").

The dissent argues that we are creating a *per se* rule that a warrant authorizing a search of "all [] evidence of any criminal activity" is an impermissible general warrant.  Dissent at 13.  Yet the dissent does not point to a single case where such expansive language was held *not* to constitute a general

---

[14] Significantly, *Soussi* cites *Naugle*, 997 F.2d at 819, for the proposition that "we limited somewhat the severability concept to allow it only when at least a substantial part of the warrant is valid."  *Soussi*, 29 F.2d at 568 n.3.

warrant. We cannot agree that "[t]he offensive phrase in Mr. Cassady's warrant is no more disagreeable than the general authorization to search in *Aday* or *George*, or the general rummaging authorized by the warrants in *Brown* and *LeBron*." *Id.* at 17. There is an important distinction to be made between warrants that have been interpreted to have an overbroad clause because they contain language permitting search and seizure of any evidence of the *specified* crime for which there was probable cause, as in *Brown* and *LeBron*,[15] and the warrant here, which permitted search and seizure of any evidence of *any* crime.[16] This catchall provision permits search for any evidence of any crime, be it murder, robbery, stolen property, fraud, tax evasion, or child pornography, to name just a few examples, despite the undisputed fact that there was no probable cause to believe that Mr. Cassady was involved in any crime other than marijuana

---

[15] In *Brown*, the defendant was suspected of motor vehicle theft and the warrant authorized seizure of specific named items and "any other item which the Officers determine or have reasonable belief is stolen." *Brown*, 984 F.2d at 1076. In *United States v. LeBron*, 729 F.2d 533, 536 (8th Cir. 1984), the defendant was suspected of purchasing stolen property and the warrant authorized seizure of certain named items as well as "other property . . . for which there exists probable cause to believe it to be stolen."

[16] While the warrants in *Aday v. Superior Court of Alameda Cty.*, 362 P.2d 47, 50 (Cal. 1961), and *United States v. George*, 975 F.2d 72, 74 (2d Cir. 1992), come closer to the type of general authorization at issue here, those decisions are in clear conflict with our holding in *Naugle* and *Sells*, and so do not change the result here. Moreover, while the Second Circuit in *George* recognized the severance doctrine and stated that warrants "may in appropriate cases be severed," it remanded for the district court to decide whether severance was appropriate in the particular case. 975 F.2d at 79, 80.

-25-

cultivation. We are unable to see how this would *not* constitute a general exploratory warrant. "As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." *Leary*, 846 F.2d at 602. Far from leaving nothing to the discretion of the officer, *see Janis Industries*, 48 F.3d at 1553, under the warrant here everything was left to the discretion of the officer.

We have previously applied a blanket suppression where officers *conducted a general search for evidence* of crimes not specifically listed in the warrant. *United States v. Foster*, 100 F.3d 846, 851-52 (10th Cir. 1996); *United States v. Medlin*, 842 F.2d 1194, 1199-1200 (10th Cir. 1988). Given this line of cases, it would be an odd result not to suppress *warrants that expressly authorize* a general search and seizure. Law enforcement officers could circumvent the prohibition against general searches (and the consequent remedy of blanket suppression) simply by inserting a catchall sentence into the warrant itself.

Moreover, all evidence was ordered suppressed in the criminal case against Mr. Cassady; this appeal concerns a civil suit for damages. Although the dissent acknowledges the rule that severance is only appropriate when "[t]he cost of suppressing all the evidence seized . . . is so great that the lesser benefits accruing to the interests served by the Fourth Amendment cannot justify complete suppression," *Sells*, 463 F.3d at 1155 n.3, the dissent fails to identify the social costs that would result from suppression in this instance, where the criminal case

-26-

was dismissed.

The dissent also neglects to recognize the important Fourth Amendment interests at stake.  Instead, it asserts that "[i]ncluding an overbroad clause [] cannot possibly benefit law enforcement" and seeks to narrow the rationale of the severability rule's limitation to only "intentional abuses of the warrant procedure."  Dissent at 21.  The purpose of the Fourth Amendment extends beyond merely preventing intentional abuses of warrant procedure, however.  As the Supreme Court said in *Coolidge*, 403 U.S. at 467, "[T]he specific evil is the 'general warrant' abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings. The warrant accomplishes this second objective by requiring a 'particular description' of the things to be seized."  *See also* 2 LaFave, Search and Seizure at § 4.6 ("[T]he primary function of the Fourth Amendment's particularity-of-description requirement [is] ensuring that the executing officer was sufficiently instructed as to what could be searched for and seized under the warrant.").

In short, the dissent's interpretation swallows the rule against general warrants.  The limiting language of the warrant's first paragraph is entirely subsumed by the catchall sentence, providing unlimited authorization for search and seizure of all evidence of any criminal activity.

***Clearly Established Law***

Having determined that Sheriff Goering's actions in authorizing the search based on the warrant violated Mr. Cassady's Fourth Amendment rights, we next ask whether it was clearly established that such conduct was unlawful. *See Cortez*, 478 F.3d at 1114 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." (quoting *Saucier*, 533 U.S. at 202)). In light of our conclusion that the warrant was impermissibly overbroad, the clearly established prong is easily satisfied. As the Supreme Court made clear, "Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh*, 540 U.S. at 563.

The fact that Sheriff Goering did not personally write the application for the warrant does not save him: he directed his subordinate to obtain a warrant and he supervised its execution. *See id.* at 565 n.9 ("[T]he Fourth Amendment's particularity requirement assures the subject of the search that a magistrate has duly authorized the officer to conduct a search of limited scope. This substantive right is not protected when the officer fails to take the time to glance at the authorizing document and detect a glaring defect that . . . is of constitutional magnitude."). Mr. Goering's contention that he could have relied on the severability doctrine and therefore been shielded by immunity also fails. The

question is not whether "it was [] clearly established that this technical error could not be cured by means of a lawful search together with the employment of the severability doctrine," Aplt. App. at 96, as he argues, but rather whether it was clearly established that the warrant violated Mr. Cassady's constitutional right to be free from unreasonable searches and seizures. In any event, the severability cases do not support its application to the warrant here, as explained above. *See Groh*, 540 U.S. at 565 ("Absent any support for such an exception in our cases, [petitioner] cannot reasonably have relied on an expectation that we would do so.").

## IV.

For the foregoing reasons, we **AFFIRM** the district court's denial of qualified immunity to Mr. Goering.

*Issued June 3, 2002*
*@ 6:41 p.m. @*
*Sterling, Colorado*

CASE No. _____

**DISTRICT COURT**
**KIT CARSON COUNTY, COLORADO**

To Willis E. Boden, or any officer authorized by law to execute a Search Warrant in the County in which the property is located at 30312 Kit Carson County Road 53, State of Colorado 80807, including the residence thereon, all outbuildings, enclosed livestock areas, garages, grain silos, storage buildings and the grounds surrounding these structures. This property is located north of Burlington in unincorporated Kit Carson County, Colorado. The affiant, Willis E. Boden, has filed an affidavit for a Search Warrant in conformity with the provisions of the Colorado Revised Statutes and the Colorado Rules of Criminal Procedure for the following described property: Any & all narcotics, to wit; marijuana plants, and/or marijuana, which is a schedule I controlled substance, Any & all illegal contraband including, but not limited to; hydroponic grow lights & meters, watering systems, food, timers, containers, CO2 cylenders, guages & testers, grow type mediums, exaust fans, fertalizer, pruning equipment, any & all U.S. currency and/or financial instruments, precious metals, jewelery, other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expendeture of money, records of transactions, records of plant growth, books, receipts, notes, ledgers, and other papers relating to transportation, ordering, purchasing, and distribution of controlled substances, in particular a Schedule I controlled substance, to wit: marijuana. Further, any scales, measuring devices which indicaye distribution of controlled substances, and/or other narcotics. Further, computers, computer generated printouts, computer programs pertaining to financial transactions and/or computer discs where computer generated information pertaining to narcotic information storage for later recovery. And all other evidence of criminal activity.

and articles of personal property tending to establish the identity of the person or persons in control or possession of the place or vehicle, including but not limited to, utility company receipts, rent receipts, cancelled mail envelopes, vehicle registration, credit card receipts, repair bills, photographs, keys and articles of clothing, believed to situated at the place, in the vehicle or on the person known or described as;

Unincorporated Kit Carson County, State of Colorado; upon one or more of the grounds set forth in the Colorado Revised Statutes and the Colorado Rules of Criminal Procedure, namely; that this property is stolen or embezzled; or is designed or intended for use as a means of committing a criminal offense; or is or has been used as a means of committing a criminal offense; or the possession of which is illegal; or would be material evidence in a subsequent criminal prosecution in this state or another state; or the



DEFENDANT'S
EXHIBIT
H

EXHIBIT A

42

seizure of which is expressly required, authorized or permitted by any statute of this state.

Based upon the affidavit of the above named affiant, which is incorporated by reference, I am satisfied that there is probable cause to believe that the property described is located at the place, in the vehicle or on the person above described. YOU ARE THEREFORE COMMANDED to search the place, vehicle or person described for the property described, and to make return of this Warrant to the undersigned Judge within ten days, and to deliver to the person from whom the property is taken a copy of this Warrant together with a receipt for the property taken, or to leave a copy of the Warrant and receipt at the place from which the property was taken.

_____
Signature of Affiant

June 3, 2002 at 6:41 p.m.
Date                     Time

STEVEN E. SHINN
Printed Name of Judge

_____
Signature of Judge

May be executed
(any time) of day.

Dist Judge
6/3/02

43

-31-

AFFIDAVIT & APPLICATION IN
SUPPORT OF A SEARCH WARRANT *Sterling, Colo.*

CASE No. 0602-1001
DISTRICT COURT,
KIT CARSON COUNTY, COLORADO

I, Willis E. Boden, state under oath that I have reason to believe that the place, in the vehicle or on the person known or described as: 30312 Kit Carson County Road 58, State of Colorado 80807, including the residence thereon, all outbuildings, enclosed livestock areas, garages, grain silos, storage buildings and the ground surrounding these structures. This property is north of Burlington in unincorporated Kit Carson County. The aforementioned property is owned by the subject: Thomas J. Cassady, and is so stated on Cassady's Colorado Driver License.
There is now located the following property: Any & all narcotics, to wit.; marijuana plants, and/or marijuana, which is a schedule I narcotic. Any & all illegal contraband including, but not limited to; hydroponic grow lights & meters, watering systems, food, timers, containers, CO2 cylinders, guages & testers, grow type mediums, exaust fans, fertalizer, pruning equipment, any and all U.S. currency and/or financial instruments, precious metals, jewelery, other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money records of transactions, records of plant growth, books, receipts, notes, ledgers and other papers relating to transportation, ordering, purchasing, and ditribution of controlled substances, in particular a Schedule I controlled substance, to wit: marijuana. Further, any scales, measuring devices which indicate distribution of controlled substance, and/or other narcotics. Further, computers, computer generated printouts, computer programs pertaining to financial trimsaction, and/or computer discs where computer generated information pertaining to narcotics information storage for later recovery.
And all other evidence of criminal activity,
and articles of personal property tending to establish the identity of the person or persons in control or possession of the place or vehicle, including but not limited to, utility company receipts, rent receipts, cancelled mail envelopes, vehicle registration, credit card receipts, repair bills, photographs, keys and articles of clothing, for which a Search Warrant may be issued pursuant to the provisions of the Colorado Rules of Criminal Procedure, on the grounds that this property is stolen or embezzled; or is designed or intended for use as a means of committing a criminal offense; or the or has been used as a means of committing a criminal offense; or the possession of which is is illegal; or would be material evidence in a subsequent criminal prosecution in this state or in another state; or the seizure of which is expressly required, authorized, or permitted by any statute in this state.



DEFENDANT'S
EXHIBIT
G
03-USM-1008(PAC)

-1-

EXHIBIT B                              40

The facts tending to establish the grounds for issuance of a Search Warrant are as follows:

On the date of June 3, 2001, at about 12:48 P.M., dispatch received a call from Gary Queen. Queen related that he was in fear of his life, and he (Queen) believed Thomas J. Cassady was after him (Queen) with a gun. This occurred at the address of 30312 Kit Carson County Road 58, State of Colorado. At about 12:58 P.M., on the same date, a second call came into dispatch from Gary Queen. Queen related that Cassady had assaulted him and he (Queen) defended himself. Queen made a written statement relating the following: "I followed Mr. Tom Cassady into the building east of the grain bin to talk to him about a grain problem, when Tom seen I was behind him he put me in a headlock to drag me out of the building. I then defended myself then went to the back of the building to see what he was hiding in the back of the building is rows of marijuana about 250 plants per row about 4 sections. I have seen pictures of marijuana so I know what I had found."

Cassady was contacted by the Sheriff and Deputies at the address of 30312 CR 58, and taken into custody for assaulting Queen. Queen also related that he believed Cassady's 20 year old son may still be on the property, this was cause for concern for officer safety as the weapon had not been recovered. All of the buildings, with the exception of the building as described in Queen's statement were searched specifically for another party that may pose a threat. This particular building as described in Queen's statement was locked, and entry was not made. The Sheriff remained at the address of 30312 CR 58 to secure the premises pursuant to a Search Warrant.

Cassady has a criminal history involving "Dangerous Drugs". In 1992, Cassady was arrested for Distribution, Grow, Cultivate, Intent to dispense, possess over 8 oz, sale, and manufacture.

Based on the aforementioned facts, I respectfully request that this Honorable Court find probable cause to issue a Search Warrant for the Property located at 30312 Kit Carson County Road 58, State of Colorado.

_____
Signature of Affiant

Subscribed under oath before me on _____ 6/3/02 _____ at 6:38 p.m.
in the City of _____        Date              Time
County of Kit Carson,
State of Colorado                       Steven E. Shinn
                                       Printed Name of Judge

                                       _____
                                       Signature of Judge

-2-

41

-33-

07-1092, *Cassady v. Goering*.

**McCONNELL,** J., dissenting.

This case involves the difficult question of whether a search warrant containing some valid and some invalid parts should be severed, so that evidence seized under the valid parts is permissible. It is undisputed that at least one clause of the warrant is unconstitutionally overbroad . Although the majority acknowledges that a substantial portion of the warrant is valid, it concludes that the invalid sections of the warrant are so "broad and invasive" as to "contaminate the whole warrant," making severance inappropriate in this case. Because I believe the majority's conclusion follows from a misreading of the warrant and adds confusion to our severability doctrine, I must respectfully dissent.

### I.

In *United States v. Sells*, 463 F.3d 1148, 1155 (10th Cir. 2006), we recognized that "every federal court to consider the issue has adopted the doctrine of severance, whereby valid portions of a warrant are severed from the invalid portions and only materials seized under the authority of the valid portions, or lawfully seized while executing the valid portions, are admissible." When a warrant contains both valid and invalid parts, severance is justified because "[t]he cost of suppressing all the evidence seized, including that seized pursuant to the valid portions of the warrant, is so great that the lesser benefits accruing to the interests served by the Fourth Amendment cannot justify complete suppression." *Sells*, 463 F.3d at 155 n.3 (quoting *United States v. Christine*, 687 F.2d 749, 758

(3d Cir. 1982)); *see also* 2 William LaFave, Search and Seizure, § 4.6(f) (4th ed.2004) ("[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well.").

Of course, severance is not always appropriate. But we have suggested that severance is usually inapplicable only under certain limited circumstances. First, severance is obviously unjustified when even after dividing a warrant into separate clauses or categories, *no* part of the warrant satisfies the probable cause and particularity requirements of the Fourth Amendment. In such a case, there is nothing for severance to save. *See Sells*, 463 F.3d at 1156 (citing *State v. Maddox*, 67 P.3d 1135, 1141 (Wash. App. 2003), *aff'd* 98 P.3d 1199 (Wash. 2004)). Likewise, severance is inappropriate in a case where the valid portions of a warrant cannot be linguistically or logically distinguished from the invalid portions of the warrant. *Sells*, 463 F.3d at 1158; *Christine*, 687 F.2d at 754. Third, several courts have also held that severance is inappropriate when it is shown that "the valid parts of the warrant were included by the Government as a pretext to support an otherwise unlawful search and seizure." *United States v. Freeman*, 685 F.2d 942, 952 (5th Cir. 1982) (internal quotation and citation omitted); *see also Sells*, 463 F.3d at 1161 n.7 (reserving question of whether such a showing would make severance inapplicable). No one has alleged that here.

Finally, like "every [other] court to adopt the severance doctrine," we have limited its application to prohibit severance from saving a warrant whose valid portions are a relatively insignificant portion of the whole. *Sells*, 463 F.3d at 1158. Only this final limitation is at issue in this case.

We have not always been consistent when describing the contours of this limitation. *See Sells*, 463 F.3d at 1158–59. In our earliest cases discussing and adopting severability, we did not address it at all. *See United States v. Leary*, 846 F.2d 592, 606 n.25 (10th Cir. 1988); *United States v. Brown*, 984 F.2d 1074, 1078 (1993)[1]. In *United States v. Naugle*, 997 F.2d 819 (10th Cir. 1993), we suggested that "[t]o make the severability doctrine applicable the valid portions of the warrant must . . . make up *the greater part of the warrant*." *See id.* at 822 (emphasis added). We appeared to clarify this statement in *United States v. Soussi*, 29 F.3d 565, 568 n.3 (10th Cir. 1994), explaining that severance is appropriate "only when at least a substantial part of the warrant is valid." In *Sells*, we noted that "[o]ther circuits, seem, for the most part, to follow the *Soussi* articulation of the severability test." *Sells*, 463 F.3d at 1159. The majority of our fellow circuits simply ask whether the valid portions of a warrant constitute an "insignificant or tangential part of the warrant." *Id.* at 1160–61; *see also* Op. 19

---

[1]Contrary to the majority's assertion, we did not address this exception in *Brown*. *See Sells*, 463 F.3d at 1150–51 (recognizing that this limitation was first made part of our doctrine in *Naugle*).

-3-

n.9 (describing cases declining to sever, all of which follow this formulation). Although we acknowledged that "there may be some nuanced differences among these various articulations," we nevertheless followed *Naugle*'s articulation and asked whether the valid parts of Mr. Sells's warrant constituted the "greater part of the warrant." *Sells*, 463 F.3d at 1159–60.

As this case demonstrates, the difference between these various formulations is not merely semantic. *Naugle*'s inquiry into whether the valid or invalid parts of the warrant constitute "the greater part of the warrant" suggests a comparative analysis under which the proper and improper components of the warrant are added up, weighed according to their "relative scope and invasiveness," *id.* at 1160, and then cast against each other to determine which preponderates. In contrast, the formulation suggested by *Soussi* and followed by most other circuits dictates a focus on the valid portions of the warrant. So long as these are *substantial*, particularized, and distinguishable from the invalid portions, severance generally would be appropriate, even if the invalid parts of the warrant were greater in number or significance.

Were we to follow our articulation of the severability test in *Soussi*, it is clear that severance would be appropriate in this case. The majority cannot seriously contest that the valid portions of Mr. Cassady's warrant—constituting, even under its analysis, almost the entire set of items described in the first paragraph—represent substantial parts of the warrant. In the terms employed by

our sister circuits, the valid portions of the warrant are indisputably *not* "insignificant" or "tangential."  *See, e.g., United States v. Kow*, 58 F.3d 423, 428 (9th Cir.1995); *United States v. George*, 975 F.2d 72, 80 (2d Cir. 1992); *United States v. Freeman*, 685 F.2d 942, 952 (5th Cir. 1982).  The majority, however, employs the *Naugle* test, and concludes that severance is inappropriate because it finds that the valid components of the warrant do not constitute the "greater part of the warrant."

In the following sections, I explain why even under our *Naugle* formulation, the valid parts of the warrant in this case constitute "the greater part of the warrant," such that severance is appropriate.  In Part III, however, I write separately to suggest that the *Naugle* articulation of the severability test disserves the purpose of severability, and suggest that we should adopt the formulation of the test stated in *Soussi* and applied by our sister circuits.

## II.

## A.

Under our precedent, the first step in determining whether severability doctrine is applicable is "to divide the warrant into individual phrases, clauses, paragraphs, or categories of items."  *Sells*, 463 F.3d at 1155.  The manner in which a warrant is divided will necessarily inform the calculation of whether its valid parts constitute the "greater part of the warrant."  Although we have cautioned that a strictly numerical comparison of the valid versus invalid portions

of a warrant should never be dispositive, we have nevertheless maintained that "the number of valid versus invalid provisions is one element in the analysis of which portion makes up the greater part of the warrant." Op. at 18 (quoting *Sells*, 463 F.3d at 1155). As a practical matter, the more valid parts of a warrant that are identified during the partition process, the more likely it is that they will constitute "the greater part of the warrant."

While the precise level of generality at which warrant components are grouped into categories will vary, often depending on the scope of the items included in the warrant, the touchstone of the partition process is the division of a warrant into *comparable* pieces in terms of the structure of the warrant itself, typically organized around items or thematically cohesive groups of items (or locations) to be searched.

Thus, in *Sells*, we divided a warrant authorizing a search for "[a]ny .223 caliber Firearm or rifle, .223 caliber ammunition, footwear, clothing, any other related fruits, instrumentalities and evidence of the crime" into five categories: (1) any .223 caliber Firearm or rifle, (2) .223 caliber ammunition, (3) footwear, (4) clothing, and (5) any other related fruits, instrumentalities and evidence of the crime. *Id.* at 1156. Likewise, in *Naugle*, 997 F.2d at 820–21, while the more expansive set of items included in the search warrant necessitated larger categories, we again divided the warrant into four relatively proportionate groupings:

(1) letters, papers, documents, checks or envelopes inscribed or printed upon with the Utah County Constable or Utah County Constable Star; (2) letters, papers, documents, checks or envelopes inscribed or printed upon any such insignia which gives the appearance or represents a government agency, or anything else that in its nature could be used to imply an affiliation with such an agency; (3) any surveillance equipment including electronic listening and recording devices, cameras, binoculars, radios, telephone hardware and records; (4) business records, personnel files, payroll records, computer, both hard and software, contracts, tapes or video equipment. *Id.* at 820.[2]

In comparison, in this case, the majority divides the warrant into three wholly disproportionate sections. Although the warrant authorizes the search of substantially more items than in *Sells* or *Naugle*, the majority divides the warrant into only three sections. But more important than the paucity of categories is the disproportionality of their content. The three categories could not be more different in size or scope. Into the first category, the majority lumps the vast majority of items to be searched for under the warrant, including marijuana, the materials commonly used to grow it, the financial instruments commonly used to

---

[2]The actual language of the warrant was as follows:

Letters, papers, documents, checks or envelopes inscribed or printed upon with the Utah County Constable, the Utah County Constable Star, or any such insignia which gives the appearance or represents a government agency, or anything else that in its nature could be used to imply an affiliation with such an agency, any surveillance equipment including electronic listening and recording devices, cameras, binoculars, radios, telephone hardware and records, business records, personnel files, payroll records, computer, both hard and software, contracts, tapes or video equipment, and any other articles used in the support or furtherance of. *Naugle*, 997 F.2d at 820 n.1.

obtain drugs and hide proceeds, the scales commonly used to weigh drugs, and the physical and computer records which commonly detail the purchase and sale of drugs. Every one of the items that the majority ultimately assumes to be validly identified has been grouped into one single category, with predictable results for the majority's later inquiry as to whether the greater number of the categories in the warrant is valid or invalid. *See* Op. 18–20. The majority points to no other case applying severability doctrine in which so extensive a set of items to be searched are consolidated into one category for purposes of severability analysis.

While the majority creates its first category out of the first 162 words of the warrant's authorization to search, it forms the second category out of the next seven: "And all other evidence of criminal activity." The majority then combines the next two paragraphs into a final category, despite the fact that—as I will later explain—the two paragraphs serve entirely different purposes in the scheme of the warrant.

I fully recognize that the process of dividing a warrant has an element of subjectivity. Reasonable minds will frequently disagree on the best way to partition the various phrases that make up a warrant, and courts should have latitude to divide a warrant as best fits the facts of a given case. This a good reason to adopt a different methodology, as I discuss in Part III. But if we are to apply the comparative approach of *Naugle*, we need some way to divide the warrant into valid and invalid parts and to quantify which is "the greater part."

-8-

Our precedents employing this approach show that warrants are to be partitioned in a commonsensical and *consistent* manner. While courts are free to divide warrants into "individual phrases, clauses, paragraphs, or categories of items," *Sells*, 463 F.3d at 1155, it is not commonsensical to divide a warrant into substantially disproportionate segments. Nor is it appropriate to partition a warrant primarily with an eye towards different components' relative propriety or impropriety. Our precedents make clear that the proper place to "evaluate the relative scope and invasiveness of the valid and invalid parts of the warrant" is *after* the warrant is partitioned into different pieces. *See Sells*, 463 F.3d at 1160. To lump all valid clauses into one category, and to divide invalid clauses into more than one, is to doom all warrants to nonseverability.

On analogy to our analysis of the warrants in *Sells* and *Naugle*, I would divide the warrant in this case into at least eight groups of items for which a search is authorized: 1) narcotics; 2) contraband related to the production of narcotics; 3) currency or other financial instruments used to obtain or conceal narcotics; 4) paper records relating to the obtainment or distribution of narcotics; 5) scales or measuring devices used to distribute narcotics; 6) computer records relating to obtaining or distributing narcotics; 7) all other evidence of criminal activity; and 8) articles of personal property tending to establish the identity of the person in control of the place to be searched. Only *one* of these categories is improper: the clause authorizing a search for "all other evidence of criminal

activity."[3]  When the warrant is more sensibly and consistently divided, it is clear

that the legitimate parts of the warrant outnumber and outweigh the illegitimate.

**B.**

Even aside from the majority's seemingly arbitrary division of the warrant

into three disproportionate parts, I believe its interpretation of the "third section"

of the warrant, *see* Op. 16 n.8, is almost certainly mistaken.  The third section, as

identified by the majority, authorizes a search for:

> articles of personal property tending to establish the identity of the
> person or persons in control or possession of the place or vehicle,
> including but not limited to, utility company receipts, rent receipts,

---

[3]We have approved searches for substantially similar items to those described in the first six categories in other drug-related cases: *See, e.g.*, *United States v. Sullivan*, 919 F.2d 1403, 1424 and n.31 (10th Cir. 1990) (upholding warrant for drugs and list of contraband related to the production of drugs); *United States v. Harris*, 903 F.2d 770, 774–75 (10th Cir. 1990) (upholding warrant against marijuana trafficker for "currency . . . stocks, bonds or other securities . . . gold silver and/or jewelry . . . books, records, memorandum, notes, bank records, investment records, or any other documents evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or money obtained through illegal means"); *United States v. Wicks*, 995 F.2d 964, 967, 973–74 (10th Cir. 1993) (upholding warrant for books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, sale and distribution of controlled substances); *id.* (upholding warrant for scales); *United States v. Gunderman*, 51 F.3d 287 (Table), 1995 WL 143143 at *3 and n.2 (10th Cir. 1995) (upholding warrant for "[i]tems associated with the processing of controlled substances for transportation and distribution, such as . . . measuring instruments and scales"); *United States v. Welch*, 291 Fed. App'x 193, 203 (10th Cir. 2008) (noting that a search for computer records connected to the manufacture of methamphetamine and would not be overbroad).

Likewise, we have frequently approved searches for the last category of items to be searched, encompassing articles of personal property that establish the identity of the person in control of the property. *See infra* at 12.

-10-

cancelled mail envelopes, vehicle registration, credit card receipts, repair bills, photographs, keys and articles of clothing, believed to situated at the place, in the vehicle or on the person known or described as:

Unincorporated Kit Carson County, State of Colorado; upon one or more of the grounds set forth in the Colorado Revised Statues and the Colorado Rules of Criminal Procedure, namely; that this property is stolen or embezzled; or is designed or intended for use as a means of committing a criminal offense; or is or has been used as a means of committing a criminal offense; or the possession of which is illegal; or would be material evidence in a subsequent criminal prosecution in this state or another state; or the seizure of which is expressly required, authorized or permitted by any statute of this state. Ex. A.

The majority understands the second paragraph of this section to expand the scope of the search authorized by the warrant, so as to permit a general search for any of the kinds of items listed in the second paragraph. *See* Op. 9. But the better understanding of the last paragraph is that it simply identifies the *grounds* upon which a search is authorized under Colorado law, rather than being an authorization to search for additional items. Although the warrant is admittedly "ungrammatical and difficult to read in many respects," Op. 9, the warrant's text—read from start to finish—confirms this reading of the paragraph's purpose. The warrant reads: "The affiant; Willis E. Boden, has filed an Affidavit for a Search Warrant . . . for the following described property . . . [the list of items to be searched for] . . . upon one or more of the grounds set forth in the Colorado Revised Statues and the Colorado Rules of Criminal Procedure, *namely* . . . [the list of grounds upon which a search may be legally authorized under Colorado

-11-

law]".  Ex. A (emphasis added).

This interpretation of the final paragraph is further supported by the fact that the six "grounds" articulated in the warrant precisely match the first six "Grounds for Issuance" for a search warrant under Colorado law.  *See* Colo. Rev. Stat. 16-3-301; Colo. R. Crim. P. 41(b)(1–6) (providing that a search warrant may be issued under this Rule to search for any property on the basis of the exact six grounds listed in Mr. Cassady's warrant).  Consequently, it is clear that the final paragraph does nothing to expand the scope of the search of the warrant, but simply identifies the legal grounds upon which a search may be authorized.[4]

As for the remainder of this part of the warrant, entitling the police officers to search for "articles of personal property tending to establish the identity of the person or persons in control or possession of [Mr. Cassady's] place," we have approved similar language on numerous occasions.  *See United States v. Burns*, 624 F.2d 95, 101 (10th Cir. 1980) (approving particularity of a search warrant designed to uncover "personal property tending to establish the identity of persons in control of contraband," and "related paraphernalia consisting in part and including, but not limited to utility company receipts, rent receipts, cancelled

---

[4]The majority misreads my interpretation of the third section as affording the police permission to search for any evidence that matches any of the grounds for which searches are authorized under Colorado law.  That is not the case.  The warrant is limited to the items specified; this paragraph merely states the legal justification.

mail envelopes, photographs and keys."); *United States v. Baker*, 166 F.3d 348 (Table Opinion), 1998 WL 808392 at *4 (10th Cir. Nov. 20, 1998) (finding the particularity requirement satisfied where the warrant authorized seizure of "articles of personal property tending to establish the identity of the person or persons in control or possession of the place or vehicle, including, but not limited to, utility company receipts, rent receipts, canceled mail envelopes, vehicle registration, credit card receipts, repair bills, photographs, keys, and articles of clothing[.]") Indeed, it is well-established that "[a] search warrant may be used, not only to gather evidence of a criminal activity, but also to gather evidence of who controlled the premises suspected of connection with criminal acts." *United States v. McLaughlin*, 851 F.2d 283, 286 (9th Cir. 1988).

Properly understood, therefore, the majority's "third section" of the warrant does not offend the Fourth Amendment.

## C.

The only overbroad language in Mr. Cassady's warrant is the clause purporting to authorize a search for "all other evidence of criminal activity." It is undisputed that this clause does not satisfy the particularity requirement of the Fourth Amendment. But as it is the only portion of a lengthy and mostly valid warrant that fails to pass muster, I would find that the valid parts of Mr. Cassady's warrant constitute "the greater part of the warrant."

To allow the presence of this admittedly overbroad phrase to "contaminate

-13-

the whole warrant," Op. 18, would be to create a *per se* rule that the presence of broad catchall language within an otherwise valid warrant always invalidates the warrant in full, no matter how detailed and numerous the valid components of the warrant may be. Indeed, the majority admits as much. *See* Op. 20 n.10 (suggesting that the overbroad phrase in Mr. Cassady's warrant would make up the greater part of the warrant regardless of the character and extent of a warrant's valid components). This would be contrary both to the historical application and purpose of severability doctrine.

Numerous courts and commentators have recognized the leading case on severability doctrine to be *Aday v. Superior Court of Alameda Cty.*, 362 P.2d 47 (Cal. 1961). *See, e.g.*, *United States v. Riggs*, 690 F.2d 298, 300–01 (1st Cir. 1982); *Freeman*, 685 F.2d at 952; *Christine*, 687 F.2d at 754 n.4; 2 LaFave, Search and Seizure at § 4.6(f). In *Aday*, a police officer obtained a warrant to search a publisher accused of conspiring to publish, print, and sell lewd books. Although the warrant authorized a search for various items in a manner comporting with Fourth Amendment requirements, it also authorized a search for "'any and all other records and paraphernalia connected with' the business of the corporate petitioners." *Aday*, 362 P.2d at 50 (quoting warrant). Although the court concluded that this and other overbroad categories "were so sweeping as to include virtually all personal business property on the premises and placed no meaningful restriction on the things to be seized," making it "*similar to the*

-14-

*general warrant permitting unlimited search*, which has long been condemned," it nevertheless *still* found the warrant to be severable. *Id.* at 51–52 (emphasis added). The court explicitly found that the warrants' defects did not turn the warrant into one "essentially general in character but as to minor items," despite the fact that part of the warrant provided effectively limitless authorization to search. *Id.* at 52.

We have ourselves previously approved of severance in a case where the bulk of items to be searched were described with particularity, but the warrant authorized a search for "*[a]ny other item* which the Officers determine or have reasonable belief is stolen while executing search warrant." *United States v. Brown*, 984 F.2d 1074 (10th Cir. 1993). In a case we cited with approval in *Brown*, the Eighth Circuit concluded that a substantially similar phrase "provide[d] no protection against subjecting a person's lawfully held property to a general search and seizure," finding that "[s]uch a general authorization allows officers to search indiscriminately throughout one's house and to seize anything they please." *United States v. LeBron*, 729 F.2d 533, 537 (8th Cir. 1984). Yet despite the fact that the overbroad phrases in these warrants effectively authorized a general rummaging, severance was deemed appropriate in both cases.

Perhaps the closest case to this one is *United States v. George*, 975 F.2d 72 (2d Cir. 1992). In that case, the warrant authorized a search for several items described with particularity, as well as for "any other evidence relating to the

-15-

commission of a crime." *Id.* at 74. Although the court recognized that this overbroad phrase "effectively granted the executing officers virtually unfettered discretion to seize anything they saw," *id.* at 75 (quotation omitted), it found severance appropriate. In language equally applicable to our own case, the court concluded that "[w]e have before us on this appeal a warrant that is, in part, so broad as to be a general warrant and which, as to that part, no reasonable police officer could suppose otherwise. Yet, we think the warrant in this particular case may be saved . . . under the doctrine of severance." *Id.* at 74. The majority's decision thus creates a circuit court conflict where none had existed before.[5]

The majority attempts to distinguish some of these cases on the ground that the overbroad language in those cases is not precisely the same as the overbroad language in Mr. Cassady's warrant. But this misses the mark. The crucial point is that other courts have often concluded that severance is appropriate even when the overbroad portion of the warrant authorizes a general search and seizure—the precise scenario before us here. And the overbroad language in *George* is virtually identical to that in Mr. Cassady's warrant.

---

[5]The majority notes that in *George*, the Second Circuit "remanded for the district court to decide whether severance was appropriate" in that case. Op. 25 n.16. Although it is technically true that the case was remanded because the district court had not ruled on severance in the first instance, the Second Circuit's language in *George* made clear that the inclusion of overbroad language authorizing a search for "other evidence relating to the commission of a crime" did not preclude the application of severance.

-16-

The majority's citation to *United States v. Foster*, 100 F.3d 846, 851–52 (10th Cir. 1996), and *United States v. Medlin*, 842 F.2d 1194, 1199–1200 (10th Cir. 1988) (*Medlin II*) is inapposite. In those cases, we ordered the general suppression of evidence when the officers executing the warrant exhibited "flagrant disregard" for its terms, "grossly exceed[ing] the scope" of the search approved by the neutral magistrate. *Medlin*, 842 F.2d at 1199; *see also Foster*, 100 F.3d at 850–51 (noting that the officer admitted that it was "standard practice" in his county when executing search warrant to "[take] anything of value" and deliberately disregard the warrant "in an effort to uncover evidence of additional wrongdoing"). Such cases raise the inference that the warrant obtained is merely a *pretext* for a general search—a textbook case for when severance is inappropriate. *See infra* at 2. By contrast, total suppression is unnecessary where, as here, the police search pursuant to a warrant duly submitted to a magistrate in good faith.

The offensive phrase in Mr. Cassady's warrant is no more disagreeable than the general authorization to search in *Aday* or *George*, or the general rummaging authorized by the warrants in *Brown* and *LeBron*. As in those cases, I would conclude that severance best promotes the policies of the Fourth Amendment, by excluding any evidence obtained pursuant to constitutionally infirm portions of

-17-

the warrant while at the same time avoiding the substantial social costs[6] that would follow from excluding evidence of criminal activity obtained on the basis of a warrant's valid components.

### III.

It is not necessary to reconsider our adherence to *Naugle*'s "greater part of the warrant" language in order to conclude that severance is appropriate here, but this case illustrates the shortcomings of our existing approach. In addition to being difficult to apply, *Naugle*'s "greater part of the warrant" test departs unnecessarily, and arguably accidentally, from the test employed in the vast majority of other jurisdictions. Moreover, the purposes of severability doctrine are better served by the test employed by our sibling circuits.

First, the subjectivity inherent in applying the "greater part of the warrant" test leads to unpredictable results. There are few guidelines for courts to follow when comparing the valid and invalid components of a warrant. Does an overbroad search for "all evidence of criminal activity" make up the greater part of a warrant when compared to two valid categories of items? Five? Ten? Does it matter for purposes of this analysis whether those categories are composed of single items, like the .223 caliber ammunition in *Sells*, or of multiple items as in

---

[6]The majority suggests that the social cost of suppressing all evidence seized in this particular case is diminished because the criminal case against Mr. Cassady has been dismissed. While the particular case before us is civil in nature, the majority would apply its rule in all cases—civil or criminal.

*Naugle*? As this case shows, the manner in which judges chop up a warrant will often have outcome-determinative effects.

If there were a sound reason for making the outcome of these cases turn on whether or not the valid parts of the warrant constituted its "greater part," then our test might be defensible, despite the difficulty of its application. But we have differed from our fellow circuits with little analysis or explanation. Indeed, it is unclear whether this court actually intended to diverge from the rule followed by most other circuits. In *Naugle*, we cited *United States v. George*, 975 F.2d 72, 79–80 (2d Cir. 1992), for the proposition that "[t]o make the severability doctrine applicable the valid portions of the warrant must . . . make up the greater part of the warrant." *Naugle*, 997 F.2d at 822. But the words "greater part of the warrant" appear nowhere in *George*. Instead, *George* follows the majority rule that we seem to have eschewed, explaining that severance "is not available . . . where the sufficiently particularized portions make up *only an insignificant or tangential part of the warrant*." *George*, 975 F.2d at 79–80 (emphasis added). Thus, it is unclear that our departure from the framework followed by other jurisdictions was deliberate. Later, in *Soussi*, we interpreted the limitation only to make severability inappropriate when the valid portions of the warrant were insubstantial. *See Soussi*, 29 F.3d at 568 n.3.

Most importantly, the purposes of severability doctrine are better served by following our *Soussi* articulation. When a warrant contains both valid and invalid

parts, severance is the favored remedy because it best balances the competing interests at stake in these cases: deterring the government from searching pursuant to warrants which fail to satisfy the probable cause or particularity requirements of the Fourth Amendment and minimizing the social costs that would follow from the total suppression of validly seized evidence because of defects elsewhere in the warrant. When the valid parts of the warrant are distinguishable and not insignificant, these interests are better promoted by severing the warrant—even when they do not constitute "the greater part of the warrant."

Severance in a case like this provides no greater incentive to the police to search in a manner inconsistent with the Fourth Amendment. Not one piece of evidence obtained only on the basis of the warrant's authorization to search for "all evidence of criminal activity" may be used against Mr. Cassady. Including an overbroad clause thus cannot possibly benefit law enforcement. Moreover, officers will not be able to obtain qualified immunity for damages stemming from those aspects of the search conducted on the basis of components of the warrant that "no reasonable officer" could have believed to be lawful. *See* Op. 20 (quoting *Groh v. Ramirez*, 540 U.S. 551, 563 (2004)). This additional deterrent will dissuade any impulse to purposefully disregard the Fourth Amendment. As a result, "the same objectives of deterrence and integrity may be served in the same way and to the same degree by limiting suppression to the fruits of the warrant's unconstitutional component," irrespective of how broad and invasive the flawed

components of a warrant may be.  2 LaFave, Search and Seizure at § 4.6(f).  On the other hand, severance here avoids the social costs that would follow from excluding all of the valid evidence of criminal activity in this case, obtained on the basis of components of the warrant that the majority concedes are valid.

The purpose of making severance inapplicable in cases where the valid parts of the warrant make up an insignificant or tangential part of the warrant is to protect against intentional abuses of the warrant procedure.  The limitation is designed to prevent law enforcement from obtaining essentially general warrants that happen to pass constitutional muster as to an occasional or minor item in the scope of the warrant.  *See Aday*, 362 P.2d at 52 ("We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified.  Such an abuse of the warrant procedure, of course, could not be tolerated."); *United States v. Spilotro*, 800 F.2d 959, 967 (9th Cir. 1986) (finding that "keys" and "cash" sought under warrant were "only a relatively insignificant part of the sweeping search for evidence of any violation of . . . thirteen statutes," including a long laundry list of invalidly described items,  and therefore were "not sufficiently separable from the rest of the warrant to allow severance").

That inference is no longer warranted where, as here, substantial and

distinguishable parts of the warrant describe items with particularity for which there is probable cause to justify a search or seizure.  Accordingly, I would conclude that we should reconsider our adherence to *Naugle*.

In any event, because even under our existing precedent the valid portions of Mr. Cassady's warrant constitute "the greater part of the warrant," I would conclude that severance is appropriate.  As a result, I would reverse the district court's determination that qualified immunity was inappropriate, at least as to damages alleged to have resulted from aspects of the search following from the execution of the valid parts of Mr. Cassady's warrant.